United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 10, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 04-70040
_____

DERRICK FRAZIER,

Petitioner - Appellant,

versus

DOUG DRETKE, Director,
Texas Department of Justice,
Correctional Institutions Division,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
District Cause No. V-02-110

_____

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PRADO, Circuit Judge.[*]

Derrick Frazier, a Texas inmate, was convicted of capital murder and sentenced to death. Frazier seeks a certificate of appealability (COA) to appeal the district court's denial of his application for federal habeas relief. After considering that request, this court denies a COA.

**Background of Frazier's Complaints**

The indictment against Frazier charged him with committing

_____

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

1

capital murder under five different theories:  The first paragraph alleged that Frazier murdered Betsy Nutt and Cody Nutt during the same criminal transaction; the second paragraph alleged that Frazier murdered Betsy Nutt in the course of robbing her; the third paragraph alleged that Frazier murdered Cody Nutt in the course of robbing Betsy Nutt; the fourth paragraph alleged that Frazier murdered Betsy Nutt in the course of burglarizing the home of Ron Lucich; and the fifth paragraph alleged that Frazier murdered Cody Nutt in the course of burglarizing Lucich's home.

On direct appeal, the Texas Court of Criminal Appeals summarized the evidence of Frazier's guilt as follows:

> Michael Brown testified that, on the evening of June 25, 1997, he drove [Frazier] and Jermaine Herron to the Lucich home, which was located approximately ten miles from Refugio in the country.  [Frazier] and Herron had been inside the place before and knew where guns were kept.  In the car, [Frazier] and Herron discussed the plan for stealing the guns.  The plan was that they would quickly retrieve the guns and kill anyone in the home.  However, before they could enter the Lucich home, the lights came on.  As a result, the three men drove away from the scene before commencing a burglary.  The next morning, Brown drove [Frazier] and Herron back to the Lucich home, dropped them off, and drove away.
>
> In his videotaped confession, [Frazier] narrated the following set of events occurring that morning.  After burglarizing the Lucich home, [Frazier] and Herron took a pistol and went to the Nutt residence.  Hiding the pistol, the two men approached Betsy Nutt, and Herron conversed with her.  After this conversation, Betsy offered to take [Frazier] and Herron to Refugio.  The three of them entered Betsy's pickup truck, but, as she started the engine, Betsy realized she had forgotten her mobile phone.  She

2

turned off the engine and went back inside her home to retrieve the phone. While Betsy was in her home, Herron told [Frazier] that "I'm going to do 'em now," which [Frazier] took to mean that Herron was going to kill the home's occupants. [Frazier] responded, "It's your business." When Betsy came back to her truck and started the engine, Herron told her that he needed to use the bathroom. Betsy told him that he could go inside and do so, and Herron entered the Nutt residence. Soon afterwards, Herron returned from the residence and told Betsy that she had a telephone call. Betsy exited the truck and entered her home, with [Frazier] following her. Once inside the Nutt home, Herron pointed the pistol at Betsy and told her not to move. Hearing the commotion, Cody Nutt [(Betsy's son)] came into the room occupied by [Frazier], Herron, and Betsy. Then Herron shot Cody with the pistol. After shooting Cody, Herron handed the gun to [Frazier] and told [Frazier] to shoot Betsy. Although he did not want to do it, [Frazier] shot Betsy twice. Both shots hit Betsy in the head. The first shot was from six to seven feet away while the second shot occurred when [Frazier] was standing over Betsy with the gun two or three feet away from her. Then Herron set the house on fire, and Herron and [Frazier] drove away in Betsy's truck.[1]

According to Brown's testimony, Herron later called Brown on the telephone. During their conversation, Herron told Brown that he (Herron) had killed a lady and a little boy. However, at a later date, when Brown and Herron were in jail, Herron told Brown that [Frazier] was the one who shot both persons.

Upon hearing this evidence, the jury returned a guilty verdict. After the State presented its punishment evidence, the jury answered the three special punishment issues in the affirmative. Accordingly, the trial court imposed the death penalty.

---

[1]In his confession, Frazier explained that after he and Herron shot Betsy and Cody, they drove back to the Lucich residence in Betsy's truck, gathered up the property they had collected earlier, set fire to the Lucich residence, and then drove back to Refugio in Betsy's truck.

The Texas Court of Criminal Appeals affirmed Frazier's conviction.  That court later denied Frazier's state habeas application.  Subsequently, the district court denied Frazier's federal habeas application and his request for a COA.  Frazier has asked this court for a COA on two issues.

**Standard for Obtaining a COA**

To obtain a COA, Frazier must make "a substantial showing of the denial of a constitutional right."[2]  To make this showing, Frazier must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[3]  Where the district court denied relief on the merits, rather than on procedural grounds, Frazier "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[4]  Where the district court denied relief on a procedural ground, Frazier must show reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether

---

[2]28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

[3]*Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484).

[4]*Slack*, 529 U.S. at 484.

4

the court was correct in its procedural ruling.[5]

In determining whether to grant a COA, this court's examination is limited to a threshold inquiry into the underlying merit of Frazier's claim.[6]  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."[7]  Instead, this court's determination is based on "an overview of the claims in the habeas petition and a general assessment of their merits."[8]  "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination."[9]

### Frazier's Complaint About the Jury Charge

Frazier contends that he was denied due process because the state trial judge combined the five theories alleged in the indictment into a single submission for the jury.  The trial judge submitted the theories to the jury in a disjunctive manner.  The jury returned a general verdict of "Guilty of capital murder as charged in the indictment."  Frazier maintains that the jury charge permitted the jury to find him guilty without unanimously

---

[5]*Id.*

[6]*Miller-El*, 537 U.S. at 336.

[7]*Id.* at 337.

[8]*Id.*

[9]*Miniel v. Cockrell*, 339 F.3d 331, 336 (5th Cir. 2003).

believing him guilty on a single theory.

Frazier first complained about the jury charge in his state habeas petition. The state habeas judge determined that Frazier's trial attorney failed to object to the jury charge and concluded that Frazier had waived any error. The Texas Court of Criminal Appeals then denied Frazier's application based on the state habeas judge's findings of fact and conclusions of law. Four of the justices of the court, however, dissented from the denial of Frazier's application. The dissenting justices observed that the court had in the past recognized that charge error of constitutional dimension was cognizable in a habeas proceeding.[10]

Frazier raised the claim again in his application for federal habeas relief. The district court determined that the operation of state law barred federal consideration of the claim. The court further determined that Frazier had failed to demonstrate cause for his procedural default or that failing to consider the claim would result in a fundamental miscarriage of justice. Frazier seeks a COA to challenge the district court's resolution of his claim. Frazier argues that reasonable jurists would disagree with the district court's conclusion that the state court adjudication of his claim was not contrary to or an unreasonable application of federal law. He maintains that the

_____

[10]*Ex Parte Derrick Frazier*, 67 S.W.3d 189, 190 (Tex. Crim. App. 2001) (Holland, J., dissenting).

6

dissenting opinion in his state habeas case demonstrates that reasonable jurists would disagree about the resolution of his claim.

The scope of federal habeas review is limited in part by the doctrine of procedural default.[11] "Procedural default exists where . . . a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal. . . ."[12] To be adequate, a state procedural rule must be strictly or regularly followed by the state court; that is, it must be "strictly or regularly applied evenhandedly to the vast majority of similar claims."[13] Where a petitioner contends a state procedural rule is not strictly or regularly followed, he must show "that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself."[14] If he does not make this showing, a procedural default exists and "the petitioner is deemed to have forfeited his federal habeas claim."[15]

The "Texas contemporaneous objection rule, upon which the

---

[11]*Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999).

[12]*Bledsue*, 188 F.3d at 254.

[13]*Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995).

[14]*Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).

[15]*Bledsue*, 188 F.3d at 254.

7

state court relied in this case, is an adequate and independent state ground that procedurally bars federal habeas review."[16] Under that rule, "a petitioner is deemed to have waived any error by failing to raise an objection."[17] Here, there is no question that Frazier's trial attorney failed to object to the jury charge. Although Frazier does not specifically address the issue of procedural default, he at least suggests that the dissent from the denial of his state habeas application indicates that the Texas contemporaneous objection rule is not strictly or regularly applied. This court has determined otherwise, observing that the Texas Court of Criminal Appeals "strictly or regularly enforces the contemporaneous objection rule."[18] Although the dissenting justices insisted that the rule is not absolute, Texas jurisprudence makes it clear that the failure to object to a purported charge error precludes review in a habeas proceeding unless the petitioner demonstrates that the charge error "in light of the trial as a whole, so infected the procedure that the applicant was denied a fair and impartial trial."[19] Yet the

---

[16]*Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003).

[17]*Haley v. Cockrell*, 306 F.3d 257, 262 n.8 (5th Cir. 2002).

[18]*Amos*, 61 F.3d at 342; *see Rogers v. Scott*, 70 F.3d 340 (5th Cir. 1995) (determining that Texas courts have not applied the contemporaneous objection rule erratically or inconsistently).

[19]*Ex Parte Maldonado*, 688 S.W.2d (Tex. Crim. App. 1985); *see Ex parte Coleman*, 599 S.W.2d 305, 306 (Tex. Crim. App. 1978) (requiring habeas applicant to demonstrate that "'the ailing

8

dissenting justices identified no cases where a petitioner met

that burden and only one case where the court reviewed

unobjected-to charge error on habeas review.[20]  This court

identified only two habeas proceedings where an intermediate

court of appeals  reviewed unobjected-to charge error.[21]

Although it appears that two Texas courts have reviewed

unobjected-to charge error in a habeas proceeding, "an occasional

act of grace by a state court in excusing or disregarding a state

instruction by itself so infected the entire trial that the
resulting conviction violates due process'") (quoting *Cupp v.
Naughten*, 414 U.S. 141, 147 (1973)).

[20]The dissenting justices cited three habeas cases for their
proposition that the court of criminal appeals reviews
unobjected-to charge error in habeas cases, yet the court
reviewed unobjected-to charge error only one of those cases.  *See
Ex parte McKay*, 819 S.W.2d 478, 480 (Tex. Crim. App. 1990)
(considering whether the trial court erred in restricting the
scope of voir dire examination); *Ex parte Maldonado*, 688 S.W.2d
at 116 (explaining that a habeas applicant must demonstrate that
an unobjected-to charge error infected his trial so as to deny
him a fair and impartial trial, but determining that the
applicant failed to allege sufficient facts that would entitle
him to review and dismissing the application); *Ex parte Coleman*,
599 S.W.2d at 307 (stating that jury charge error rarely rise to
constitutional error and concluding, without explaining why, that
the habeas applicant failed to show that his due process right
was violated by unobjected-to jury charge error).

[21]*See Jones v. State*, No. 14-03-00499-CR, 2004 WL 438676, at
*2 (Tex. App.——Houston [14 Dist.] 2004, pet. ref'd) (not
designated for publication) (reviewing alleged jury charge error
on writ of habeas corpus for egregious harm even though the
appellant did not object at trial); *Thacker v. State*, 999 S.W.2d
56, 65 (Tex. App.——Houston [14 Dist.] 1999, pet. ref'd)
(requiring habeas applicant to prove that alleged unobjected-to
jury charge error denied her a fair and impartial trial).

9

procedural rule does not render the rule inadequate."[22]  Frazier

has not shown that the Texas contemporaneous objection rule does

not apply to his claim.  As a result, a procedural default

exists, and federal review is

precluded unless Frazier can overcome his procedural bar.[23]

A state prisoner can overcome a procedural default by

demonstrating cause for the default and actual prejudice

resulting from the purported violation of federal law, or by

demonstrating that failing to consider the claim will result in a

fundamental miscarriage of justice.[24]  To show cause for the

default, Frazier must show that "he was impeded by some objective

factor external to the defense, such as governmental interference

or the reasonable unavailability of the factual basis for the

claim."[25]  Frazier, however, has not advanced any external factor

that impeded his attorney from objecting to the jury charge, and

the factual basis for Frazier's claim existed at trial.  Thus,

Frazier has not shown cause for his default.  Because he has not

shown cause, there is no need to determine whether Frazier

demonstrated actual prejudice.

---

[22]*Amos*, 61 F.3d at 342; *see also Bass v. Estelle*, 705 F.2d
121, 122-23 (5th Cir. 1983) (declining to consider an occasional
act of grace by Texas courts as the failure to strictly or
regularly follow the state's contemporaneous objection rule).

[23]*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[24]*Coleman*, 501 U.S. at 750.

[25]*McCleskey v. Zant*, 499 U.S. 467, 468 (1991).

To demonstrate that the failure to consider his claim will result in a fundamental miscarriage of justice,[26] Frazier must make a persuasive showing that he is actually innocent.[27] Frazier, however, does not claim that he is innocent or advance any argument about innocence. Thus, he has not shown that a fundamental miscarriage of justice will result.

Frazier has not shown cause for his default and has failed to demonstrate that a fundamental miscarriage of justice will result; thus, Frazier has failed to overcome his procedural bar. Consequently, reasonable jurists would not debate the district court's conclusion that the procedural default bars federal review. As a result, Frazier is not entitled to a COA on his jury charge claim.

**Frazier's Ineffective Assistance of Counsel Claim**

Frazier also maintains that his trial attorney was ineffective for failing to investigate his background and for failing to present mitigation evidence during the punishment phase of his trial. At trial, the prosecutor called several punishment witnesses who testified about Frazier's violent nature. Frazier's attorney, however, did not call any witnesses.

Frazier first complained about his attorney's failure to present mitigating evidence in his state habeas application. To

---

[26]*Coleman*, 501 U.S. at 750.

[27]*Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

11

support his complaint, Frazier presented affidavits from his grandmother and his aunt. In those affidavits, the affiants described how Frazier was abandoned by his mother when he was a teenager and how his mother died shortly thereafter. The affiants presented Frazier as a good child who was left alone by the death of his mother and who was dependent thereafter on his aunt for support. After considering the affidavits and the trial record, the state habeas court determined that Frazier's trial attorney actually presented the information contained in the affidavits by cross-examining the state's punishment witnesses, and thus concluded that the attorney was not ineffective in failing to present the mitigating evidence.

Frazier expanded his claim in his federal habeas proceeding. In the district court, Frazier argued that his trial attorney was unreasonable for failing to investigate the possibility that Frazier's family and friends could have provided evidence that could have resulted in a life sentence in lieu of the death penalty. Frazier maintained that his trial attorney failed to investigate numerous mitigating factors: beatings with a belt by his step-father; his adaptability to prison life as evidenced by good behavior and obtaining a GED; his involvement as a child in his church and community; his reputation among his school teachers, school administrators, and coaches; the neighborhood in which he was reared; whether he was a leader or a follower; his substance abuse; and potential emotional problems caused by the

12

death of his mother. Frazier supported his claim with eighteen affidavits which presented Frazier as a loving and well-behaved child who went bad only after he lost his mother. Frazier also presented a mitigation prospectus in which a mitigation expert opined that "there were factors present in the life of Mr. Frazier which were not investigated and which might be shown to be mitigating factors to the crime."

Considering Frazier's expanded claim, the district court observed that Frazier's federal claim asserts a "legal argument and evidentiary support that fundamentally differs from that evidence anticipated by his state claim" and determined that Frazier had not exhausted his claim to the extent that it exceeded the evidence presented in state court. As for the exhausted portion of the claim, the district court determined that the state habeas court's resolution of the claim was reasonable based on the evidence presented to the state habeas court. The court explained that although a reasonable attorney making a prudent investigation into Frazier's background would have uncovered a great deal of potentially mitigating evidence, nothing indicated that the result of the proceeding would have been different had the attorney presented a mitigation case.

Frazier seeks a COA to challenge the district court's resolution of his ineffective assistance of counsel claim. In seeking a COA, Frazier criticizes the state habeas court for not focusing on the reasonableness of the investigation supporting

13

his trial attorney's decision to not introduce mitigating evidence. Frazier relies on *Wiggins v. Smith*[28] where the Supreme Court explained that the focus in an ineffective assistance claim is not on whether counsel should have presented a mitigation case, but rather on whether the investigation supporting counsel's decision not to introduce mitigating evidence was itself reasonable.[29] Frazier, however, does not address the issue of exhaustion, except to emphasize that the district court struggled in reaching its determination. Because *Wiggins* did not change the requirement that a petitioner must exhaust his state court remedies[30] or the requirements for demonstrating ineffective assistance of counsel,[31] Frazier cannot show that reasonable jurists would debate the district court's treatment of his claim.

First, reasonable jurists would not debate the district court's determination that Frazier did not exhaust his federal habeas claim.[32] "A federal habeas petitioner must exhaust state

---

[28]539 U.S. 510 (2003).

[29]*Wiggins*, 539 U.S. at 522.

[30]28 U.S.C. § 2254(b)(1).

[31]*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[32]*See Slack*, 529 U.S. at 484 (requiring a petitioner who challenges the district court's determination that a claim is procedurally barred to show that reasonable jurists would find it debatable whether the court was correct in its procedural ruling).

14

remedies before he can obtain federal habeas relief."[33]  To

exhaust a claim in state court, a petitioner must fairly present

the substance of the claim to the state court.[34]  A petitioner

fails to satisfy the exhaustion requirement where he "'advances

in federal court an argument based on a legal theory distinct

from that relied upon in the state court.'"[35]  He also fails to

satisfy the exhaustion requirement if he "presents newly

discovered evidence or other evidence not before the state courts

such as to place the case in a significantly different and

stronger evidentiary posture than it was when the state courts

considered it."[36]

Here, Frazier presented an evidentiary basis for his federal

claim that was significantly different from the evidence he

presented in state court.  In state court, Frazier complained

about his attorney's failure to present a mitigation case and

contended that his attorney failed to investigate any possible

aggravating factors presented by the state.  In federal court, he

complained about the unreasonableness of the investigation that

served as the basis for his attorney's decision not to present a

mitigation case.  Although the legal theories he relied on in

---

[33]*Carey v. Saffold*, 536 U.S. 214, 220 (2002).

[34]28 U.S.C. § 2254(b)(1).

[35]*Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (citations omitted).

[36]*Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

15

state court are essentially the same theories he advanced in federal court, Frazier presented a significantly different evidentiary basis for his federal claim. The brief affidavits he presented in state court present Frazier as a good boy who was abandoned by his mother and left dependent on his aunt for assistance. The eighteen affidavits supporting his federal claim present much more. The affidavits describe a well-behaved and sweet child who was very involved in his church and performed well in school, but got involved with drugs and a bad crowd after his mother died. The affidavits describe Frazier's poor family social history, unstable home life, good school performance, and non-violent nature. Together, the federal affidavits suggest that Frazier's criminal conduct was due to bad friends, drugs, a troubled and abusive childhood, living in the projects, a follower's mentality, and psychological issues. This information was not presented to the state court and places Frazier's case in a significantly different and stronger evidentiary posture than it was when the state court considered it. Although a habeas petitioner may under some circumstances present evidence that was not presented to the state court, evidence that places his claim "in a significantly different legal posture must first be presented to the state courts."[37] The affidavits Frazier presented in the district court do not merely supplement the

---

[37]*Anderson v. Johnson*, 338 F.3d 382, 386-87 (5th Cir. 2003) (internal quotations omitted).

16

information presented to the state court; instead, they present numerous mitigating factors that were not presented to the state court. As a result, the district court's procedural ruling that Frazier failed to exhaust his claim is correct. Thus, Frazier's claim is barred to the extent that it exceeds the evidentiary basis presented in state court.

Second, reasonable jurists would not debate the district court's resolution of Frazier's unexhausted claim—that his attorney was ineffective for failing to present mitigation witnesses. To establish ineffective assistance of counsel, a criminal defendant must show that his attorney's assistance was deficient and that the deficiency prejudiced him.[38] "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"[39] "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."[40] To show prejudice, the defendant must show a reasonable probability that, absent his attorney's error, the jury would have concluded that the balance of aggravating and

---

[38]*Strickland*, 466 U.S. at 687; *Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003).

[39]*See Wiggins*, 539 U.S. at 522 (quoting *Strickland*, 466 U.S. at 688).

[40]*Strickland*, 466 U.S. at 688.

17

mitigating circumstances did not warrant the death sentence.[41]

The state habeas judge determined that Frazier's attorney was not deficient—the first part of the test for ineffective assistance of counsel—but the district court was troubled by the lack of an explanation for why the attorney failed to investigate the possibility that family members could provide mitigation evidence.  Faced with the numerous affidavits Frazier presented with his federal habeas petition, the district court questioned the reasonableness of the attorney's performance, but determined that Frazier could not show that the result of his trial would have been different even if the attorney had called mitigation witnesses.

Although the district court resolved this claim without making a determination about deficient performance, the state judge's determination that the attorney was not deficient was not an unreasonable application of clearly established federal law for determining whether an attorney's performance was deficient.[42]  The trial attorney's cross-examination of state punishment witness Courtney La Font revealed that Frazier's mother had abandoned him when he was 15 and that his mother died

---

[41]*Id.* at 695.

[42]*See Pondexter v. Dretke*, 346 F.3d 142, 145 (5th Cir. 2003) (explaining that a petitioner seeking habeas relief based on ineffective assistance of counsel must show that the state court's adjudication of his claim constitutes an unreasonable application of clearly established federal law).

18

shortly afterwards. La Font explained that his mother's death left Frazier feeling hurt, confused, and alone. She stated that Frazier lived periodically with his father and his aunt when his mother was still living and that he started using drugs. This information is essentially the same information that was presented in the affidavits of Frazier's grandmother and aunt.

In addition, the attorney's cross-examination of two other state punishment witnesses showed that Frazier had previously completed a boot-camp program without disciplinary action and that Frazier earned his GED while incarcerated. This testimony evidenced the possibility that Frazier could be incarcerated without posing a danger to others. Thus, Frazier's trial attorney presented mitigation evidence.

As for the second part of the test for ineffective assistance of counsel, reasonable jurists would not debate the correctness of the district court's determination that nothing indicated that the result of Frazier's trial would have been different. The state presented several punishment witnesses who testified about various violent acts committed by Frazier. This testimony revealed that Frazier was a gang member, robbed a man at age 15, raped his girlfriend at age 16, committed an aggravated assault at age 17, was convicted for unlawfully carrying a weapon while he was on probation at age 18, and assaulted a 17-year-old at age 20. The state's punishment evidence indicated that Frazier engaged in repeated and

19

escalating acts of violent behavior and that efforts to rehabilitate him failed.

The evidence portrayed Frazier as a violent person who poses a danger to others. Yet nothing in either the affidavits presented to the state court—or even in the plethora of affidavits presented to the federal court, were they, contrary to this opinion, to be considered—suggests that the jury would have considered a life sentence in lieu of the death penalty. As the district court observed, "[t]he instability of Frazier's childhood and his good nature as a youth, when compared to the violent life he chose to live and failed to reform, would not call for a reasonable probability of a different result." Thus, no reasonable probability exists that, had Frazier's attorney called Frazier's grandmother and aunt as mitigation witnesses, the jury would have returned a life sentence.

Frazier has not demonstrated that reasonable jurists would debate the correctness of the district court's resolution of his claim. As a result, he is not entitled to a COA on his ineffective assistance of counsel claim.

## Conclusion

Because Frazier has not shown that reasonable jurists would debate the district court's resolution of his claims, the court DENIES Frazier's request for a COA.

APPLICATION DENIED.

20