# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70023

United States Court of Appeals
Fifth Circuit

**FILED**
May 1, 2018

Lyle W. Cayce
Clerk

ROBERT ALAN FRATTA,

Petitioner–Appellant,

versus

LORIE DAVIS, Director,
  Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, DENNIS, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Robert Fratta moves for a certificate of appealability ("COA") to appeal the denial of his petition for writ of habeas corpus under 28 U.S.C § 2254. Because his claims are procedurally defaulted and he cannot overcome the default, the motion is denied.

No. 17-70023

I.

Fratta was convicted of capital murder in 1997 for the murder of his wife Farah Fratta.[1]  He was granted federal habeas corpus relief in 2007.[2]  He was again convicted and sentenced to death.  The Texas Court of Criminal Appeals ("TCCA") affirmed on direct appeal and denied his state habeas petition.[3]  Fratta then filed a petition for habeas relief in federal court, asserting nineteen grounds.  The district court denied the petition, finding three claims unmeritorious and the other sixteen procedurally defaulted and unexhausted.[4]

According to the state, Fratta employed Joseph Prystash to murder Farah.  Prystash in turn employed Howard Guidry to carry out the murder, with Prystash serving as the getaway driver.  Prystash's girlfriend, Mary Gipp, provided testimony linking the three men together and to the murder.[5]

II.

"A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.  § 2253(c)(2).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Where a petition is dismissed on

---

[1] We refer to Robert Fratta as "Fratta" and Farah Fratta as "Farah."

[2] *Fratta v. Quarterman*, No. CIV.A. H-05-3392, 2007 WL 2872698, at *1 (S.D. Tex. Sept. 28, 2007), *aff'd*, 536 F.3d 485 (5th Cir. 2008).

[3] *See Fratta v. State*, No. AP-76,188, 2011 WL 4582498, at *1–2 (Tex. Crim. App. Oct. 5, 2011) (unpublished); *Ex Parte Fratta*, No. WR-31,536-04, 2014 WL 631218, at *1 (Tex. Crim. App. Feb. 12, 2014).

[4] The district court provided alternative holdings, rejecting each of the sixteen procedurally defaulted and unexhausted claims on the merits.

[5] For more detailed histories, *see Fratta v. Davis*, No. 4:13-CV-3438, 2017 WL 4169235, at *1–2 (S.D. Tex. Sept. 18, 2017); *Fratta*, 2011 WL 4582498, at *1–2; *Fratta*, 536 F.3d at 489–90.

No. 17-70023

procedural grounds, the petitioner must also demonstrate "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Fratta essentially requests we issue COAs on five questions: (1) whether Texas law regarding hybrid representation is an independent and adequate state law ground to default claims; (2) if his claims are defaulted, whether he overcomes that default with a showing of actual innocence; (3) whether his claims are exhausted; (4) whether there was insufficient evidence for conviction; and (5) whether the indictment was constructively amended via an allegedly erroneous jury instruction. Because Texas law regarding hybrid representation is an independent and adequate state ground such that Fratta procedurally defaulted his insufficiency and constructive-amendment claims, and that Fratta cannot overcome default with a showing of actual innocence, we need not reach requests three through five.

## III.

The adequacy and independence of a state procedural rule are reviewed de novo. *Reed v. Scott*, 70 F.3d 844, 846 (5th Cir. 1995). To be independent, the "state court opinion [must] clearly and expressly indicate[ ] that its judgment is independent of federal law." *Id.* To be adequate, the state procedural rule must be "firmly established at the time it was applied," such that it is "'strictly or regularly followed by the cognizant state court . . . [and] strictly or regularly applied *evenhandedly to the vast majority of similar claims*.'" *Id.* (brackets and emphasis in original). There is "a presumption of adequacy when the state court expressly relies on [a state procedural rule] in deciding not to review a claim for collateral relief."[6] And "an occasional act of grace by

---

[6] *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (quoting *Lott v. Hargett*, 80 F.3d

3

No. 17-70023

a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995). When determining the adequacy of a procedural bar, "we must emphasize the application of the bar to the specific constitutional claim at issue." *Reed*, 70 F.3d at 846–47. The petitioner bears the burden of "demonstrat[ing] that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).[7]

Fratta contests the adequacy of Texas's hybrid-representation bar.[8] In 1977, the TCCA announced, in a case involving the defendant's right to cross-

---

161, 165 (5th Cir. 1996)).

[7] "Where a petitioner contends a state procedural rule is not strictly or regularly followed, he must show 'that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself.' If he does not make this showing, a procedural default exists and 'the petitioner is deemed to have forfeited his federal habeas claim.'" *Frazier v. Dretke*, 145 F. App'x 866, 870 (5th Cir. 2005) (first quoting *Stokes*, 123 F.3d at 860; then quoting *Bledsue v. Johnson*, 188 F.3d 250, 354 (5th Cir. 1999)).

[8] It is clear from the opinion that the state court refused to review the relevant claims only because of the hybrid-representation rule. Thus, the independence prong is not disputed. *See Fratta*, 2011 WL 4582498, at *1 n.2 ("Throughout these proceedings, appellant has filed *pro se* pleadings and letters in an attempt to supplement his attorneys' efforts. Appellant is not entitled to hybrid representation. *See Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004). Thus we do not address his *pro se* points.").

Fratta also proffers a convoluted theory that his pro se briefs were not "hybrid" because he was requesting to proceed *pro se* and had a right to do so under Texas law. We have reviewed the filings Fratta identifies. They request only that the TCCA also accept his *pro se* filings and that he receive a hearing "for appointment of new counsel." Nothing there suggests that he wanted to proceed solely *pro se*. Instead, his filings suggest unhappiness with his current counsel, that he is entitled to effective counsel, and that he desires different counsel. Further, a request to proceed *pro se* in Texas must be clear and unequivocal, and it most certainly was not here. *See Hathorn v. State*, 848 S.W.2d 101, 123 (Tex. Crim. App. 1992) ("[A]n accused's right to proceed pro se does not attach until he clearly and unequivocally asserts it."). Fratta claims that this question is a factual one. In that case, the state's implicit finding that Fratta was not seeking to proceed *pro se* "shall be presumed to be correct," and Fratta must show otherwise "by clear and convincing evidence," which, as explained, he has failed to do. 28 U.S.C. § 2254(e)(1).

4

examine a witness himself, that "[t]here is no constitutional right in Texas to hybrid representation partially pro se and partially by counsel." *Landers v. State*, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). Three years later, that principle was definitively extended to the filing of *pro se* briefs on appeal.[9] The rule was thus firmly established by the time the TCCA utilized it in Fratta's 2011 appeal.[10]

In his appellate brief, Fratta cites several cases to illustrate that the hybrid-representation rule is not regularly applied. In those cases, the state court peeked at the *pro se* brief to determine whether it "reveals [an] error which should be considered in the interest of justice."[11] In two of the cases, the court made no reference to what claims the *pro se* brief alleged,[12] and Fratta

[9] *See Rudd v. State*, 616 S.W.2d 623, 625 (Tex. Crim. App. 1981) ("Appellant is represented by counsel who filed a brief in the case. There is no right to hybrid representation. The pro se briefs therefore present nothing for review. An examination of the contentions asserted therein reveals no error that should be considered in the interest of justice.") (citation omitted).

[10] *See also Ex parte Bohannan*, 350 S.W.3d 116, 116 n.1 (Tex. Crim. App. 2011) ("We have received numerous documents from applicant himself, but applicant is represented by counsel and is not entitled to hybrid representation. Because applicant is represented by counsel, we disregard his numerous *pro se* submissions and take no action on them.") (citations omitted); *Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim. App. 2006) (same); *Ex parte Eldridge*, No. WR-60,478-02, 2005 WL 8154075, at *1 n.1 (Tex. Crim. App. Feb. 9, 2005) (unpublished) (same).

[11] *Johnson v. State*, 629 S.W.2d 137, 139 (Tex. App.—Dallas, 1982, no writ). *See Walker v. Martin*, 562 U.S. 307, 311 (2011) ('[A] state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default."); *Beard v. Kindler*, 558 U.S. 53, 60 (2009) ("We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review.").

[12] *Evans v. State*, 677 S.W.2d 814, 821 (Tex. App.—Fort Worth 1984, no writ); *Johnson*, 629 S.W.2d at 139. In his briefing in the district court, Fratta mentioned two other TCCA decisions and two other intermediate appellate court decisions. Those decisions also do not identify the claims raised pro se. *See Flores v. State*, 871 S.W.2d 714, 724 (Tex. Crim. App. 1993); *Stephen v. State*, 677 S.W.2d 42, 45 (Tex. Crim. App. 1984); *Ghant v. State*, No. 03-04-00473-CR, 2006 WL 952384 (Tex. App.—Austin April 13, 2006, no writ) (unpublished); *Fuller v. State*, 30 S.W.3d 441, 445 (Tex. App.—Texarkana 2000, pet. ref'd).

No. 17-70023

provides no indication that the defendants raised claims similar or identical to Fratta's. And, three of the cases Fratta cites do not involve claims similar to his.[13]

In response to this panel's request for supplemental briefing on "whether Texas state courts have regularly applied the hybrid-representation bar to claims identical or similar" to Fratta's, Fratta identifies six intermediate appellate cases[14] involving insufficiency claims where the court noted the hybrid-representation bar and chose to invoke its discretion to peek at the petition in the interest of justice.[15] As to Fratta's claim of improper amendment of

[13] *See In re State ex rel. Villalobos*, 218 S.W.3d 837, 841 (Tex. App.—Corpus Christi, 2007, no pet.) (involving a pro se response to the state's petition for writ of mandamus against a judge who had granted defendant's motion for post-conviction DNA testing); *Madden v. State*, 691 S.W.2d 688, 690 (Tex. Crim. App. 1985) (involving a pro se claim contesting the trial court's admission of the defendant's written statement without analyzing its voluntary-iness); *Phillips v. State*, 604 S.W.2d 904, 907–08 (Tex. Crim. App. 1979) (involving a pro se claim disputing the trial court's decision to allow the defendant to engage in hybrid representation and cross-examine witnesses, specifically contending that the court should have provided stronger warnings about the risks of conducting cross-examination pro se). None of these cases presents similar or identical claims indicating irregular application.

Two other intermediate appellate cases were mentioned in Fratta's briefing in the district court. Both reviewed claims were neither similar nor identical to Fratta's claims here. *Tones v. State*, No. 03-04-00288-CR, 2005 WL 723673, *4 n.1 (Tex. App.—Austin Mar. 31, 2005, pet. dism'd) (unpublished) (noting that pro se brief raised "claims of ineffective assistance of counsel and violations of *Brady v. Maryland*"); *Fuller v. State*, 30 S.W.3d 441, 445 (Tex. App.—Texarkana 2000, pet. denied) ("Fuller's pro se brief makes three general points: the failure of this Court to 'investigate' his appeal; his alleged mental incompetence; and the alleged ineffectiveness of his court-appointed counsel.").

[14] *See Jefferson v. State*, No. 05-15-00477-CR, 2016 WL 3749396, at *3–4 (Tex. App.—Dallas July 7, 2016, pet. ref'd) (unpublished); *Green v. State*, No. 10-07-00211-CR, 2009 WL 1800697, at *5 (Tex. App.—Waco June 24, 2009, pet. ref'd) (unpublished); *Guyton v. State*, No. 10-07-00070-CR, 2009 WL 290935, at *2 (Tex. App.—Waco Feb. 6, 2009, pet. dism'd); *Green v. State*, 137 S.W.3d 356, 365 (Tex. App.—Austin 2004, pet. ref'd); *Sinyard v. State*, No. 11-94-190-CR, 1996 WL 33650185, at *2 (Tex. App.—Eastland Mar. 21, 1996, no pet.) (unpublished); *Warren v. State*, 641 S.W.2d 579, 581 (Tex. App.—Dallas 1982).

[15] The other two cases cited by Fratta in his response letter either do not involve hybrid representation or do not raise similar claims. *See Anderson v. State*, No. 13-96-124-CR, 1997 WL 33642798, at *1 (Tex. App.—Corpus Christi Aug. 2014, 1997) (unpublished) (reviewing a pro se insufficiency claim where the defendant fired his attorney and received permission to

No. 17-70023

the indictment, he identifies three similar cases.[16]

Though Fratta points to a handful of cases over the last thirty years that raise claims similar or identical to his, those few exceptions—all but one by intermediate appellate courts[17]—"do[] not render the rule inadequate."[18]

---

proceed pro se before filing a pro se brief, thereby ensuring there was no hybrid representation); *Edwards v. State*, No. 03-97-00587-CR, 1999 WL 959166, at *10 (Tex. App.—Austin Oct. 21, 1999, no pet.) (reviewing a pro se jury-instruction claim);

[16] *See Newton v. State*, 648 S.W.2d 693, 694 (Tex. Crim. App. 1983); *Williams v. State*, 946 S.W.2d 886, 892 (Tex. App.—Waco 1997, no writ); *Cline v. State*, 770 S.W.2d 844, 848 (Tex. App.—Texarkana 1989, no pet.).

Fratta points to one other intermediate appellate court case that reviewed an improper amendment of the indictment claim. *Robertson v. State*, 701 S.W.2d 665, 667–68 (Tex. App.—Houston [14th Dist.] 1985, no pet.) Though the defendant in that case raised the amendment claim in his *pro se* brief, that claim was also raised in the brief filed by his attorney. And, the court reviewed only claims raised by defendant's attorney, though it noted where a claim was raised both by the attorney and the defendant. Thus, that case does not involve ignoring the hybrid-representation bar.

In the district court, Fratta also cited *Campbell v. State*, No. 01-98-00570-CR, 2000 WL 553185 (Tex. App.—Houston [1st Dist.] May 4, 2000, pet. denied) (unpublished), for support. That case, however, involved a *pro se* reply to an attorney's *Anders* brief, which the TCCA previously held did not constitute hybrid representation. *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005) ("Under *Anders*, an appellant has a right to review the *Anders* brief that counsel submitted and to respond to it on his own. In the case before us, the *pro se* brief that Appellant filed in response to his counsel's filing of an *Anders* brief is not dual representation.")

[17] *See Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989) (looking only at whether "the Florida Supreme Court ha[d] failed to apply its procedural rule consistently and regularly"); *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964) (looking at cases decided by the South Carolina Supreme Court).

In response to our request for further briefing, the Director noted that since 1995 the TCCA has refused to review *any* pro se briefs where the defendant is represented by counsel. *See, e.g.*, *Ex parte Medina*, 361 S.W.3d 633, 637 (Tex. Crim. App. 2011); *Bohannan*, 350 S.W.3d at 116 n.1; *Marshall*, 210 S.W.3d at 620 n.1; *Eldridge*, 2005 WL 8154075, at *1 n.1; *Scheanette*, 144 S.W.3d at 505 n. 2; *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995). Thus, "[i]n the vast majority of cases . . . the [TCCA] has faithfully applied its rule." *Dugger*, 489 U.S. at 410 n.6; *accord Amos*, 61 F.3d at 339 ("The Supreme Court has further defined this concept of adequacy, however, to include a state procedural ground that is strictly or regularly applied *evenhandedly to the vast majority of similar claims*.") (emphasis in original).

[18] *Amos*, 61 F.3d at 342 ("The handful of [six] cases upon which [petitioner] relies as typifying the TCCA's disregard of the contemporaneous objection rule are either insufficient

7

No. 17-70023

"[A]fter all, 'regularly' is not synonymous with 'always' and 'strictly' is not synonymous with 'unanimously.'" *Amos*, 61 F.3d at 342.

Fratta does not show that reasonable jurists would disagree with the district court's ruling that his claims are procedurally defaulted. We thus need not reach either the exhaustion issue or the merits "unless [Fratta] can demonstrate cause for the default and actual prejudice" or can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## IV.

Fratta requests we grant a COA on whether he demonstrated a fundamental miscarriage of justice by raising a meritorious actual-innocence claim under *Schlup v. Delo*, 513 U.S. 298 (1995). "[T]enable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To prove actual innocence, Floyd must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Perkins*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

---

to undercut the adequacy of the Texas rule or inapplicable."). *See also Dugger*, 489 U.S. at 410 n.6 ("Moreover, the [three] cases that respondent and the dissent cite as ignoring procedural defaults do not convince us that the Florida Supreme Court fails to apply its procedural rule regularly and consistently."); *Barr*, 378 U.S. at 149 (refusing to find that the South Carolina Supreme Court regularly applied a procedural bar where it had refused to utilize that bar in three cases in the two month period before petitioner's case—including one the day before—and in one case a few weeks after petitioner's case).

No. 17-70023

A defendant must show "new reliable evidence . . . not presented at trial." *Schlup*, 513 U.S. at 324. Examples of "new reliable evidence" are "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Id*. "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted . . . and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."[19] We must "make a probabilistic determination about what reasonable, properly instructed jurors would do" after considering all of the evidence. *Id*. at 329.

Fratta proffers, as "new reliable evidence," ballistic testing that he claims excludes, as the murder weapon, the .38 Charter Arms caliber revolver that he purchased. The ballistics report states,

> Examinations have been completed on these items and it was determined that the submitted fired lead bullets and fragments contain insufficient definite and consistent individual characteristics to effect an identification. Test fired bullets fired in the [Charter Arms .38 caliber revolver] were found [to] bear inconsistent characteristics from the barrel.

That report was made in March 1995 and was known to Fratta before the second trial. In fact, Fratta attempted to introduce the report at trial, but it was ruled inadmissible hearsay.

This court has yet to weigh in on the circuit split concerning what constitutes "new" evidence. The nature of the split over "new" is based on whether the evidence must be "newly discovered" or "newly presented."[20] We still need not weigh in on that discussion because the ballistic report is not "new" under

---

[19] *Schlup*, 513 U.S. at 328 (internal quotation marks and citations omitted); *accord House v. Bell*, 547 U.S. 518, 538 (2006).

[20] *See Wright v. Quarterman*, 470 F.3d 581, 591 (5th Cir. 2006) (describing split and collecting cases).

either standard. Fratta possessed the report at the time of his second trial, and he presented it to the court, even though it was ultimately ruled inadmissible.[21]

Regardless, even assuming that the ballistics report was "new," that new evidence is not "so strong" that it undermines our confidence in the jury's verdict. We are allowed to weigh that "new" evidence against "old" evidence, even old inadmissible evidence, because "the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial."[22]

Prystash, the "middleman," confessed that Fratta solicited him to kill Fratta's wife and provided him a gun to do so, and that he in turn solicited Guidry to perform the act. Though that confession was deemed inadmissible at trial, we can consider it at this stage for the reasons articulated above. Further, Gipp testified at the second trial that Prystash was friends with Fratta; Fratta began calling Prystash in the weeks and days leading up to the murder; Prystash and Guidry (her next door neighbor) were friendly; Prystash "talk[ed] to [her] about killing Farah Fratta"; Prystash told her what day he would kill Farah (Wednesday, the day Farah was murdered); Prystash told her he was "the middle man to find someone that would kill Farah"; Prystash left with Guidry the evening of the murder; she saw Prystash and Guidry return together on the evening of the murder; she saw Prystash stash a gun the

---

[21] *See Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008) (explaining that evidence was not "new" where "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation").

[22] *Schlup*, 513 U.S. at 327–28; *accord House*, 547 U.S. at 538 ("[T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." (internal quotation marks and citations omitted)).

evening of the murder; Prystash told her "they had killed her"; and Prystash was promised a jeep "for his part in this murder."

No reasonable jurist would disagree that Fratta fails to prove actual innocence. He thus cannot overcome procedural default, and we need not reach his other requests.

The motion for a COA is DENIED.