IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

v.

AMBROSE L. SYKES,

          Defendant.

:
:
:
:
:
:
:
:
:

I.D. No. 0411008300 WLW

Kent County

Submitted: October 11, 2017
Decided: December 7, 2017

## ORDER

Upon Defendant's Amended Second Motion
for Postconviction Relief.
*Denied.*

John Williams, Esquire and Stephen R. Welch, Jr., Esquire of the Department of Justice, Dover, Delaware; attorneys for the State.

Herbert W. Mondros, Esquire of Margolis Edelstein, Wilmington, Delaware and Samuel J.B. Angell, Esquire of the Federal Community Defender Office, Philadelphia, Pennsylvania; attorneys for the Defendant.

WITHAM, R.J.

Before the Court is the Petitioner, Ambrose L. Sykes', Amended Second Motion for Postconviction Relief. Sykes raises a number of grounds for relief from his 2006 conviction for Murder in the First Degree, Rape in the First Degree, and other related offenses, and relief from this Court's subsequent imposition of a life sentence. The majority of Sykes' claims for relief are based on allegations of ineffective assistance of postconviction counsel against Sykes' two postconviction attorneys, Patrick Collins and Albert J. Roop, V (hereinafter, "Rule 61 Counsel").

After careful consideration of the parties' filings and review of recent Delaware precedent, the Court concludes that Sykes' Amended Second Motion for Postconviction Relief must be summarily **DENIED** pursuant to Superior Court Criminal Rule 61(d)(2).

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The facts of this case have been thoroughly set forth on a variety of occasions by this Court, as well as the Delaware Supreme Court.[2] The following is the statement of facts contained in the Delaware Supreme Court's opinion on direct appeal and its opinion affirming this Court's denial of postconviction relief:

> On November 8, 2004, sixty-eight-year-old Virginia Trimnell was scheduled to fly from Washington, D.C. to Detroit to visit her daughter.

---

[1] The facts are taken from the record, the Delaware Supreme Court's opinion in Sykes' direct appeal, *Sykes v. State (Sykes I)*, 953 A.2d 261 (Del. 2008), this Court's postconviction opinion, *State v. Sykes (Sykes II)*, 2014 WL 619503 (Del. Super. Jan. 21, 2014), and the Delaware Supreme Court's opinion affirming this Court's denial of postconviction relief, *Sykes v. State (Sykes III)*, 147 A.3d 201 (Del. 2015).

[2] *Id.*

2

When Trimnell did not arrive as scheduled, her daughter contacted the Dover Police Department. Officer Jeffrey Gott went to check on Trimnell. Gott testified that when he arriv[ed] at Trimnell's apartment, it was tidy and undisturbed and he observed no signs of forced entry. He also testified that he saw two shopping bags sitting on the bed. However, he could not locate Trimnell's car or purse.

At approximately 3:30 a.m. on November 10, 2004, Dover Police Sergeant Timothy Mutter saw Trimnell's car traveling on Kings Highway in Dover. The driver, later identified as Sykes, got out of the vehicle, and Mutter asked him for his license and registration. Sykes initially complied but then fled after Mutter asked about Trimnell. The police could not apprehend Sykes that night.

Police found Sykes' fingerprints on a shovel and a rubber glove inside Trimnell's car. The police also found three gas cans and women's clothing that matched what others saw Trimnell wearing on the day she disappeared. In the trunk of the vehicle, police found a large green suitcase with Trimnell's name and Trimnell's purse inside a green duffel bag. Police found Trimnell's body stuffed into the large green suitcase.

An autopsy indicated that Trimnell died by strangulation. A sexual assault kit detected sperm in Trimnell's vagina. The autopsy did not, however, reveal any defense wounds on Trimnell. DNA testing was conducted. Sykes' saliva reference sample was ultimately determined to match all sixteen loci from Trimnell's vaginal swab. Sykes' DNA also matched the sperm located on a comforter found in Trimnell's trunk.

Police seized a computer during a search of Trimnell's apartment. An examination of that computer revealed that it had been used to access pornographic websites on November 7, 2004. Trimnell's credit cards had been used to access the website[s]. That computer had not been

3

previously used to visit similar websites. Police also seized two pornographic magazines and four computers from Sykes' mobile home. Files on two of those computers contained "similar images of adult pornography" to those found on Trimnell's computer. Additionally, police found a leather bag containing silver dollars in the home of Sykes' girlfriend, Jenny St. Jean. Trimnell's daughter later identified the bag as Trimnell's.

Trimnell's telephone records revealed that a cell phone registered to Sykes made three calls to her home on the morning of November 7, 2004. Sykes, a night shift restaurant custodian at Dover Downs, did not work on November 7, 2004. He quit this job on November 8, 2004 due to alleged transportation problems. After he quit his job, Dover Downs security cameras showed him leaving the parking lot on November 8, 2004 in Trimnell's car.

Police arrested Sykes on November 29, 2004 and the State later indicted him on two counts of Murder First Degree and other felony and misdemeanor charges. The State later re-indicted him and added two counts of Rape First Degree.[3]

On June 27, 2006, Sykes was convicted on all counts. He was sentenced to death on September 20, 2006.

On January 24, 2008, after a brief remand to this Court, the Delaware Supreme Court affirmed Sykes' conviction and sentence to death.[4]

On October 24, 2008, Sykes, represented by Rule 61 Counsel, timely filed his First Motion for Postconviction Relief. On October 19, 2009, Sykes filed an

---

[3] *Sykes III*, 147 A.3d at 206-07 (quoting *Sykes I*, 953 A.2d at 264-65).

[4] *Sykes I*, 953 A.2d 261 (Del. 2008).

Amended First Motion for Postconviction Relief in which he raised twenty-three separate claims for relief. Beginning October 10, 2011 and concluding on November 7, 2012, the Court held an extensive evidentiary hearing over the course of eleven days.[5] Twenty-one witnesses, including trial counsel, testified during the hearing. An additional three witnesses, who did not testify, were deposed. And, the Court admitted more than forty exhibits into evidence. Post hearing briefing concluded on August 12, 2013.

On January 21, 2014, the Court issued its ninety-eight page decision denying Sykes' Amended First Motion for Postconviction Relief. The Delaware Supreme Court affirmed the denial of relief on January 30, 2015.

On January 11, 2016, Sykes filed his Second Motion for Postconviction Relief. Sykes amended the motion on May 10, 2017, after the Court re-sentenced Sykes pursuant to the Delaware Supreme Court's decisions in *Rauf v. State* and *Powell v. Delaware.*[6]

On July 7, 2017, the State filed its Answer to Sykes' Amended Second Motion for Post-Conviction Relief and Motion for Summary Dismissal pursuant to the provisions of Delaware Superior Court Criminal Rule 61(d)(5).

On October 10, 2017, Sykes filed a Reply to the State's Answer.

---

[5] The hearing was punctuated by extensions of time, discovery matters, conferences, and witness scheduling, effecting the available hearing dates.

[6] *Rauf v. State*, 145 A.3d 430 (Del. 2016); *Powell v. Delaware*, 153 A.3d 69 (Del. 2016).

## THE PARTIES' CONTENTIONS

According to Sykes, he was deprived of his constitutional rights at his capital trial and his right to effective assistance of postconviction counsel under *Guy v. State*, 82 A.3d 710 (Del. 2013), in his First Amended Rule 61 proceeding. Specifically, Sykes pleads the following:

First, Sykes contends that Rule 61 Counsel were ineffective for failing to properly appeal all of the twenty-three issues considered by this Court in Sykes' Amended First Motion for Postconviction Relief. Apparently, Rule 61 Counsel abandoned certain issues on appeal due to space constraints.[7] Sykes claims Rule 61

---

[7] Sykes identified sixteen claims of ineffective assistance of trial counsel that Rule 61 Counsel failed to raise on appeal. The claims include that: (1) trial counsel failed to meet with Sykes for sixteen months, until shortly before trial; (2) trial counsel failed to interview Jenny St. Jean; (3) trial counsel failed to investigate and present information regarding St. Jean's mental health and anger problems; (4) trial counsel failed to investigate and present information regarding St. Jean's history of assaults; (5) trial counsel failed to investigate and present information regarding St. Jean's criminal history involving abuse of the elderly; (6) trial counsel failed to investigate and present information regarding St. Jean's former live-in paramour, Mike McClements; (7) trial counsel failed to investigate and present information regarding St. Jean's use of Sykes' computer to access pornographic sites; (8) trial counsel failed to investigate and present testimony from Douglas Dyer, Carla Randall, and James Thomas; (9) trial counsel failed to properly investigate the rape charges against Sykes; (10) trial counsel failed to retain, consult, and call as a witness at trial an expert forensic pathologist; (11) it was improper for trial counsel's opening statement to include an unauthorized admission of guilt to burglary; (12) trial counsel failed to challenge suitcase drag mark testimony; (13) trial counsel failed to object to the State's improper remarks during the guilt phase of Sykes' trial, where the State argued multiple facts not in evidence; (14) trial counsel failed to object to the inclusion in evidence of an electronic key card reader, steak knife, lockbox and two photos of a handgun, gruesome photos, and pornographic magazines; (15) trial counsel failed to request a D.R.E. 609 instruction as to Jenny St. Jean; and (16) trial counsel failed to object to the Court's reasonable doubt instruction at Sykes' trial.

Counsel's decision was improper and could have been prevented.[8]

Second, Sykes contends that Rule 61 Counsel failed to present relevant testimony from Andrew Lash, an expert in computer forensics. According to Sykes, Rule 61 Counsel never elicited testimony, found in Mr. Lash's report, that demonstrates that only one of the search terms – "bigbutts" – is found on both Trimnell and Sykes' computers, but was never typed the same way on the Trimnell computer as it was in various forms on Sykes' computer. Moreover, there are apparently several search terms that appear only on the Trimnell computer but not on Sykes' computer. For instance, Sykes alleges that "phat+asses" appears on the Trimnell computer but never appears on Sykes' computer. Sykes believes these differences demonstrate that it was less likely that he was the person who typed the terms into the Trimnell computer.

Third, Sykes contends that Rule 61 Counsel failed to elicit testimony from witnesses who could have testified that Sykes had a relationship with the victim. According to Sykes, Douglas Dyer and Carla Randall could have testified that, on separate occasions, they both saw Sykes in a car matching the description of Trimnell's car weeks before her body was found. This information was not presented during the evidentiary hearing for Sykes' Amended First Motion for Postconviction Relief because Rule 61 Counsel failed to call Ms. Randall as a witness and counsel

---

[8] Sykes faults Rule 61 Counsel for filing a page extension motion too early in the appeal process. Sykes contends that if Rule 61 Counsel had waited to file the motion, they would have had a better understanding of how long the brief needed to be. Sykes also faults Rule 61 Counsel for failing to adequately explain why such additional space was needed.

never asked Mr. Dyer about seeing Sykes in a white car that matched the description of Trimnell's vehicle. Rule 61 Counsel also apparently failed to call James Thomas as a witness at the evidentiary hearing for Sykes' Amended First Motion for Postconviction Relief. Mr. Thomas would have testified that he was driving with Sykes near Trimnell's apartment, in another car, a week or two before the victim disappeared. Evidently, a white woman in a big white car drove past them; Mr. Thomas thinks it was a Buick LeSabre. Mr. Thomas claims that he could tell from the way Sykes and the woman looked at each other, that they knew one another. Sykes contends that this evidence would have countered the State's argument, and the Court's finding, that there was no evidence that Trimnell and Sykes knew each other. Moreover, the evidence would have cast significant doubt on the State's theory that this was a random, violent act, and put the case in a much different light. Therefore, Sykes contends that Rule 61 Counsel were ineffective under *Guy v. State* for failing to present key witnesses and failing to ask pertinent questions of the witnesses they did present.

Fourth, Sykes contends that Rule 61 Counsel failed to appropriately consult with their expert forensic pathologist, Jonathan Arden, M.D. Apparently Rule 61 Counsel failed to obtain available testimony from Dr. Arden that challenged the State's assertion that Trimnell did not consent to sexual contact with Sykes. If Rule 61 Counsel had asked Dr. Arden, he would have explained: (1) that there were no injuries diagnostic or suggestive of forced, non-consensual penetration; and (2) that such testimony could have been given at the time of trial by a qualified expert. Sykes

8

believes that if this testimony was presented at trial there would have been a reasonable probability of a different outcome as to the rape conviction(s), and the burglary conviction that relied on the rape conviction. Therefore, Sykes claims that he was prejudiced.

Fifth, Sykes submits that the cumulative effect of the errors set forth in his Amended Second Motion for Postconviction Relief entitle him to relief in the form of a new trial.

In response to Sykes' Amended Second Motion for Postconviction Relief the State alleges the following:

First, the State contends that Sykes' motion must be summarily dismissed pursuant to Superior Court Criminal Rule 61(i). The State does not believe that Sykes qualifies for either exception under Rule 61(d)(2).

Second, assuming that Sykes can satisfy the procedural requirements of Rule 61, the State contends that *Guy v. State* does not provide Sykes relief because Sykes relies upon dicta that has never been expressly affirmed.[9] Moreover, the State alleges that, in light of the substantial amendment of Rule 61 on June 4, 2014, *Guy* is no longer applicable because the amended rule did not specifically provide defendants with a right to effective assistance of postconviction counsel.[10]

---

[9] The State also contends that *Coles v. State*, supports the State's contention that *Guy* does not provide Sykes the right to effective postconviction counsel. *Coles v. State*, 2017 WL 3259697 (Del. July 31, 2017).

[10] On June 4, 2014, the Superior Court amended several subsections of Rule 61. Rule 61(i)(2)(i) was amended to provide that "[n]o second or subsequent motion is permitted under this Rule unless that second or subsequent motion satisfies the pleading requirements of subparagraphs

9

## DISCUSSION

The Delaware Supreme Court recently reiterated in *Durham v. State* that, before reaching the merits of a Motion for Postconviction Relief, this Court must consider the procedural requirements of Rule 61.[11] As this is Sykes' second motion for postconviction relief under Rule 61, it is a successive motion and Sykes must show that either (1) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (2) "a new rule of constitutional law, made applicable to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction . . . invalid."[12] If Sykes cannot satisfy the exceptions to the procedural bar set forth by Rule 61(d)(2), then his motion must be denied without consideration of the merits.[13]

Sykes contends that the following constitutes "new evidence" that creates a

---

(2)(i) or (2)(ii) of subdivision (d) of this rule." Rule 61(d)(2) provides that a "second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted *after a trial* and" the motion either pleads that new evidence exists of the movant's innocence in fact or that a new retroactive rule of constitutional law render the movant's conviction invalid. Super. Ct. Crim. R. 61(d)(2) (2014) (emphasis added).

[11] *See Durham v. State*, 2017 WL 5450746, at *1 (Del. Nov. 13, 2017) (citing *Younger v. State*, 580 A.2d 552, 554 (Del. 1990)).

[12] Super. Ct. Crim. R. 61(d)(2)(i-ii).

[13] *See Durham*, 2017 WL 5450746 at *2 (holding that "even if [the petitioner] did not have a prior opportunity to raise his ineffective assistance of postconviction claims, and even if, under *Guy v. State*, he raised the claims in a timely fashion, [the petitioner] was still required to satisfy the requirements of Rule 61(d)(2) to avoid the summary dismissal of his second postconviction motion.").

strong inference of actual innocence:

(1) Mr. Lash's discovery that a specific pornographic search term - "bigbutts" - was typed differently on Trimnell's computer than it was on Sykes' computer. And, several of the pornographic search terms that appeared on Trimnell's computer did not appear on Sykes' computer.

(2) Never elicited testimony from Mr. Dyer and Ms. Randall that they observed Sykes driving in a car similar to Trimnell's car, weeks before her body was found.

(3) Never elicited testimony from Mr. Thomas that he was driving with Sykes near Trimnell's apartment, in another car, a week or two before the victim disappeared, when Mr. Thomas observed a white woman in a big white car drive past them. Mr. Thomas claims that he could tell from the way Sykes and the woman looked at each other, that they knew one another.

(4) Dr. Arden's testimony that there were no injuries on Trimnell, diagnostic or suggestive, of forced, non-consensual penetration, and that such testimony could have been given at the time of trial by a qualified expert.

After an extensive review of state and federal precedent, the Court finds that it is necessary to discuss what constitutes "new evidence" that creates a strong inference of actual innocence. The Court has previously applied two similar standards. On one hand, in *State v. Fogg*, the Court defined "new evidence" as, "evidence that was not available at the time of trial but has since been discovered."[14]

---

[14] *State v. Fogg*, 2016 WL 6556430, at *2 (Del. Super. Nov. 4, 2016) (citing *State v. Wright*, 2006 WL 1685821, at *1 (Del. Super. Mar. 29, 2006)).

The Court adopted this definition from *State v. Wright*, defining "new evidence" in the context of Superior Court Criminal Rule 33.[15] On the other hand, the Court in *State v. Phlipot* adopted the federal standard for defining "new evidence."[16] Although the standard is similar to that applied in *Fogg*, the Court finds that the federal standard is relevant for two reasons: (1) federal courts have more thoroughly defined "new evidence"; and (2) federal courts have applied "new evidence" in the context of demonstrating the "actual innocence" of a petitioning prisoner. The Court recognizes that the federal standard is an equitable exception, rather than a procedural rule for postconviction relief, used to overcome the Antiterrorism and Effective Death Penalty Act's ("AEDPA") limitations period for the filing of a habeas petition by state petitioners.[17] Nonetheless, the federal standard is helpful under these circumstances, as the Court has found little guidance for interpreting the precise meaning of new evidence in relation to a claim of actual innocence pursuant to Rule 61(d)(2)(ii).

The district court in *Phlipot v. Johnson*, 2015 WL 1906127, at *4 (D. Del. 2015), provides that a claim of actual innocence requires the petitioner to:

> "persuad[e] the [court] that, in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt."[18] An actual innocence claim must be based on "new reliable

---

[15] *Id.*

[16] *State v. Phlipot*, 2017 WL 2266836, at *3 (Del. Super. May 24, 2017).

[17] *Id.*

[18] *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013)).

evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented a trial."[19] In the Third Circuit, evidence is "new" for the purposes of the *Schlup* standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence,[20] except in situations where that evidence was not discovered due to the ineffective assistance of trial counsel.[21] In turn, when determining if a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."[22] Finally, a court "may consider how the timing of the submission [of actual innocence] and the likely credibility of the affiant[] bear on the probable reliability of that evidence."[23]

In light of this standard, even if the Court assumes that all of Sykes' purported new evidence was not presented to the jury, Sykes has failed to show that it is more likely than not that no reasonable juror would have found him guilty of the Rape and Murder of Trimnell. The Court relies upon the overwhelming evidence already identified in this case. For instance, even if witnesses had seen Sykes driving

---

[19] *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[20] The circuits addressing the issue are split over what constitutes "new" evidence for *Schlup* purposes. The Eight Circuit's interpretation of "new" evidence corresponds with the Third Circuit's, whereas the Seventh and the Ninth Circuits do not require the exercise of due diligence, and view "new" evidence as evidence that was not "presented" at trial. *See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011) (collecting cases).

[21] *See Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010).

[22] *House v. Bell*, 547 U.S. 518, 538 (2006).

[23] *Schlup*, 513 U.S. at 332; *see also McQuiggin*, 133 S.Ct. at 1935.

Trimnell's vehicle previously, that fact does little to explain why he was driving her vehicle while her dead body was bound and stuffed into a suitcase in the trunk. Thus, it is not unreasonable for a juror to find Sykes guilty of Trimnell's Murder. In addition, even if Sykes knew Trimnell *socially*, the Court finds that it is too large a step to presume, based on Dyer, Randall, and Thomas' limited testimony, that Sykes had a prior *sexual* relationship with Trimnell. As Sykes has not presented more definite evidence of such a relationship, it would not be unreasonable for a juror to find Sykes guilty of Rape as well. Moreover, Dr. Arden's testimony does not alter this holding because there was ample other evidence to establish the lack of Trimnell's consent. The Court identified the following evidence in *Sykes II*:

> the presence of [Sykes'] semen in the victim; the reddening of her vaginal area; . . . the fact that the victim was strangled to death; the injuries inflicted upon the victim in regards to the trauma and hemorrhages to her head and scalp; and the fact that the victim's body was naked from the waist down.[24]

As it is not unreasonable for a juror to find these facts sufficient to convict Sykes of Rape, Sykes has failed to meet his burden to demonstrate actual innocence. Finally, the Court finds that the evidence regarding pornographic search terms is insignificant. Again, considering the overwhelming evidence presented against Sykes, it would not be unreasonable for a juror to convict Sykes of the crimes charged.

---

[24] *Sykes II*, 2014 WL 619503, at *36 (The Court also held that a lack of prior relationship between the victim and Sykes was significant. That fact is still significant, although the Court would now clarify that Sykes has presented some minimal evidence of a prior *social* relationship. Therefore, the Court would specify that it is significant that there is no evidence that Sykes and the victim had a prior *sexual* relationship.).

14

## CONCLUSION

In sum, Sykes' Amended Second Motion for Postconviction Relief is **DENIED** because Sykes failed to satisfy the requirements of Rule 61(d)(2) to avoid the summary dismissal of his motion.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:   Prothonotary
cc:   Herbert W. Mondros, Esquire
       Samuel J.B. Angell, Esquire
       John Williams, Esquire
       Stephen R. Welch, Jr., Esquire