PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4580
_____

LAFOND JAMES HOUCK,
                                                  Appellant

v.

WILLIAM STICKMAN, Superintendent SCI-Pitts;
THE DISTRICT ATTORNEY OF THE COUNTY OF
ALLEGHENY;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 04-00507)
Honorable Arthur J. Schwab, District Judge
_____

Argued October 4, 2010

BEFORE:  SCIRICA, JORDAN, and GREENBERG, Circuit
Judges

(Filed: November 17, 2010)
_____

Mary Gibbons (argued)
600 Mule Road
Toms River, NJ 08757-0000

        Attorney for appellant

Stephen A. Zappala, Jr.
District Attorney
Michael W. Streilly
Deputy District Attorney
Rusheen R. Pettit (argued)
Ronald M. Wabby, Jr.
Amy L. Fitzpatrick
Office of the District Attorney
436 Grant Street
401 Allegheny County Courthouse
Pittsburgh, PA 15219-0000

        Attorneys for appellees

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

2

This matter comes on before this Court on an appeal from an August 15, 2005 order of the District Court entered August 16, 2005, denying appellant LaFond James Houck's petition for a writ of habeas corpus and adopting as the opinion of the Court a report and recommendation of a magistrate judge dated June 21, 2005, recommending that the Court deny the petition. The magistrate judge filed her report and recommendation after respondents, officers of the Commonwealth of Pennsylvania, the appellees on this appeal, filed an answer to Houck's petition and Houck, in turn, filed a traverse to the answer. The magistrate judge, and thus the District Court, predicated a portion of the opinion on Houck's failure to present certain claims in the Pennsylvania state courts, an omission causing the magistrate judge, and thus the District Court, to determine that they were barred from considering those claims on their merits. Houck appealed and we granted a certificate of appealability on the following issue: "whether [Houck's] procedural default should be excused on the basis of newly presented evidence of his actual innocence." Thus, we deal only with that issue and do not review the opinion's disposition of the issues not procedurally barred on their merits.

## II. FACTS

On the afternoon of October 13, 1997, two masked men dressed in black attacked Andre Freeman while he was sitting inside his car at Grove Place, a residential area in the Hill District of Pittsburgh. After the assailants dragged Freeman from his car, beat him and threatened him with a firearm, they

3

forced him into the trunk of their own car, a red Ford Taurus. Freeman, however, would not fit in the trunk, so the assailants lowered the Taurus's back seat thus allowing part of Freeman's body to protrude into the car's passenger compartment. Fortunately there were witnesses to the attack who called the police and told them what they had seen.

Later in the evening of the same day two Pittsburgh police officers noticed a red Taurus matching the eye witnesses' description and consequently the officers followed the Taurus. Eventually its operator, Houck, drove the Taurus into a gas station and parked. There was one passenger, Charlie Turner, in the Taurus. After seeing the officers, Turner began walking away from the gas station, dropping a gun and a black pullover as he walked. When an officer pursued Turner he fled but the police overtook and captured him. The police recovered the gun and pullover and, in addition, in their search of Turner at the time of his arrest, they found a mask in his right sock.

Subsequently, the police officers found Freeman, who was partially in the trunk and partially in the Taurus's back seat, a position made possible because, as we have explained, the rear seat of the Taurus was folded down enabling Freeman to protrude from the trunk into the back seat. Freeman, who was bloody, told the officers that he had been shot.

A gas station attendant approached the officers and pointed to a black Pontiac Grand Prix parked at the gas station. One of the officers approached the Grand Prix and found Houck, who was wearing a bloody white T-shirt and had a black sweater in his lap, inside. The officers also found a gun nearby.

The police then arrested and searched Houck, finding a mask in his pants pocket.[1]

Charges to which Houck pleaded not guilty were filed against him arising from the events we have described, and a jury trial at which Houck testified and maintained his innocence ensued. [2] Houck explained that during the late afternoon of October 13, 1999, he picked up his son at his school, the Mt. Zion Christian Academy, and then took him home. Houck testified that the blood on his T-shirt was not from an assault on Freeman but was from his role in breaking up a fight between his fiancée's mother and the mother's boyfriend. Houck also testified that after that fight, Turner and two other men in the Taurus picked him up and, after Houck and Turner dropped the two other men off, he and Turner went to the gas station where the police arrested him. Houck claimed that he was unaware of the assault on Freeman and did not know that Freeman was in the Taurus when he, Houck, was in that car.

Notwithstanding Houck's denials, the jury convicted him of kidnapping, aggravated assault, carrying a firearm without a

1. Houck claims that the item retrieved from his pocket was a skullcap.

2. At the trial the prosecution introduced evidence that after the police took Houck to a police station and gave him his Miranda rights, he made an oral confession that a detective recorded on paper. Though the defense argued that Houck had not given the statement and pointed out that he had not signed it, the Court allowed the statement to be used at the trial.

license, reckless endangerment, and criminal conspiracy. Ultimately the state trial court sentenced him on the various charges to a cumulative indeterminate term of 15 to 30 years incarceration. Houck then appealed.

Houck asserts that he asked his appellate counsel, who had not been his trial counsel, to pursue several issues on the appeal of his state conviction, including his trial counsel's incompetency in failing to investigate fully Houck's alibi but he failed to do so. In particular, Houck believed that trial counsel should have examined the student log book at his son's school because Houck believed that it would have shown that he had been picking up his son at the time of the assault on Freeman.[3] Moreover, Houck thought that witnesses who had been at the school could confirm his assertion about having picked up his

---

3. In Houck's brief on this appeal he indicates that after respondents "raised the issue of procedural default in their Answer to the petition/ amended petition [he] filed a Traverse, attaching exhibits which established that he had requested by letter to his original appellate counsel, that these very issues of trial counsel's ineffectiveness be raised on appeal." Appellant's br. at 10. Houck's pinpoint citation supporting this statement is to appendix at 136 but that page does not support his assertion. Houck's traverse, however, refers to Houck's trial counsel's failure to discover the log book and it makes clear that Houck asked his original appellate counsel to raise some issues of trial counsel's incompetency. In the circumstances, we will assume that Houck made a request to appellate counsel to pursue the log book issue on appeal.

son.  Appellate counsel, however, did not pursue this ineffective assistance of counsel issue, focusing instead on other matters, including a different ineffective assistance of trial counsel claim. On Houck's appeal, the Pennsylvania Superior Court affirmed the judgment of conviction and sentence, and the Pennsylvania Supreme Court denied further discretionary review.

Houck then sought post-conviction relief under Pennsylvania's Post-Conviction Relief Act.  His petition, however, did not address his trial counsel's failure to investigate his alibi or his appellate counsel's failure to raise that issue on the direct appeal, though it did address other ineffective assistance of counsel claims with respect to his counsel on direct appeal.  Houck's petition was unsuccessful both in the state trial and appellate courts.

Houck then filed a petition for a writ of habeas corpus in the District Court.  Houck's federal habeas corpus petition advanced six claims,[4] and he later filed an amended petition

_____

4. In the petition Houck claimed:

Appellate counsel gave ineffective assistance for failing to raise the claim that trial     counsel gave ineffective assistance for improperly advising appellate [sic] not to present character testimony;

Appellate counsel gave ineffective assistance for failing to argue that trial counsel     gave ineffective assistance for failing to request an instruction that the defense witness had no duty to contact the police or district attorney's [sic];

Appellate counsel gave ineffective assistance for failing to argue that the trial     court erred, over objection, in

7

asserting five additional claims.[5]  The relevant claims for our purposes all assert that Houck's trial counsel failed to gather evidence that would have supported his defense.  Houck asserted that his counsel had been ineffective and, in this regard, cited <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052

---

allowing hearsay testimony to be presented;
    Trial counsel was ineffective in failing to call alibi witness Tracy . . . ;
    Trial counsel was ineffective in failing to investigate alibi defense . . . ;
    Trial counsel was ineffective for failing to investigate the crime scene.

App. at 30-36.

5. In the amended petition Houck claimed trial counsel was ineffective for:
    Failure to investigate all the facts necessary to formulate a plausible alibi defense;
    Failure to investigate and/or interview potential witness Everett Carmack;
    Failure to go to scene of crime to locate potential eyewitnesses;
    Failure to investigate and use available corroborating/rebuttal evidence;
    Failure to investigate medical records and circumstances surrounding
    statements  of Andre Freeman.

App. at 38-75.

8

(1984).

Respondents opposed the petition, arguing that Houck had not exhausted certain claims in the state courts and, therefore, those claims were procedurally defaulted. Houck filed a traverse admitting those claims had been defaulted, but arguing that this default should be excused because his attorney on his direct appeal from the conviction and sentence had failed to raise these claims despite Houck's explicit request that he do so. Accordingly, Houck relied on the "cause and prejudice exception" to the procedural default rule as authority for the Court to entertain his defaulted claims. The Supreme Court explained that exception in Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991), as follows: "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law . . . ." The Supreme Court then went on to explain that an attorney's ignorance or inadvertence is not cause but: "Attorney error that constitutes ineffective assistance of counsel is cause . . . ." Id. at 753-54, 111 S.Ct. at 2566-67. To support his assertion of counsel's ineffectiveness, Houck attached his correspondence with his original appellate counsel.[6]

---

6. As we indicated above, see supra n.3, we cannot be sure that the correspondence included a request that his counsel pursue an alibi defense but we will assume that it did.

Although Houck in his traverse to the answer to the petition did not explicitly argue that his procedural default should be excused because of new evidence of actual innocence, he did attach several new affidavits that he obviously intended to establish that he was innocent of the offenses for which the jury had convicted him. In the circumstances, we regard his claim of actual innocence on which we granted the certificate of appealability as preserved for review in this Court. See Hubbard v. Pinchak, 378 F.3d 333, 337 (3d Cir. 2004).

The District Court referred Houck's petition to a magistrate judge, who concluded that certain claims had not been exhausted in the state courts and thus were barred. The magistrate judge rejected Houck's argument regarding the "cause and prejudice exception" to the procedural default doctrine, but did not consider whether evidence of Houck's actual innocence excused his procedural default in the state courts. This omission was understandable inasmuch as Houck did not explicitly raise an actual innocence claim in his petition or his traverse. The magistrate judge rejected Houck's remaining claims on the merits.[7]

---

7. The magistrate judge questioned whether appellate counsel was ineffective, but noted that even assuming that he was ineffective Houck should have presented that claim in his post-conviction relief proceedings in the state courts. See Murray v. Carrier, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46 (1986) ("Ineffective assistance of counsel . . . is cause for a procedural default. However, we think that the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it

Houck filed objections to the magistrate judge's report and recommendation in which he contended that the District Court should excuse his default because he had presented new evidence of actual innocence.[8] Houck cited Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851 (1995), in support of his position. In its order of August 15, 2005, the District Court found Houck's objections "to be without merit" and adopted the magistrate judge's report and recommendation without discussing Houck's assertion of actual innocence. This appeal and our grant of a certificate of appealability followed.[9]

The District Court had jurisdiction under 28 U.S.C. § 2254 and we have jurisdiction over the District Court's final order under 28 U.S.C. §§ 1291, 2253. We are exercising plenary review on this appeal as the District Court in this procedural default case did not conduct an evidentiary hearing. See Albrecht v. Horn, 485 F.3d 103, 114 (3d Cir. 2007); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001).

---

may be used to establish cause for a procedural default.").

8. His claim of actual innocence in his objections reinforces our determination to regard that claim as preserved for our consideration.

9. Houck filed a motion for reconsideration in the District Court on August 29, 2005, which the Court denied on September 9, 2005. He has not appealed from the September 9, 2005 order.

## III.  DISCUSSION

A.  Excusing Default Based on Evidence of Actual Innocence

A district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court.   28 U.S.C. § 2254(b). However, there is a narrow class of cases in which, in order to avoid a fundamental miscarriage of justice, evidence of a petitioner's actual innocence can excuse his failure to exhaust his state court remedies.  McCleskey v . Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470 (1991); Hubbard, 378 F.3d at 338.[10] A case in which a petitioner seeks to excuse his procedural default by advancing a claim of actual innocence is known as a "gateway" case.  See, e.g., Albrecht, 485 F.3d at 122.  In a gateway case the court initially examines the question of whether a petitioner's procedural default should be excused, thereby allowing him to present evidence of a constitutional violation that infected his original trial.   In this case the constitutional violation that Houck sought to advance was that he had had ineffective assistance of counsel in the state courts. Thus, we are not dealing here with a "freestanding" claim of innocence case in which a petitioner advances a claim of

_____

10. The Supreme Court in House v. Bell, 547 U.S. 518, 536, 126 S.Ct. 2064, 2076 (2006), characterized a claim of actual innocence as a "specific rule to implement" the cause and prejudice exception to the procedural default bar.

innocence by itself as a basis for granting him habeas corpus relief.

In an actual innocence gateway case a petitioner must demonstrate two things before his procedural default will be excused. First, a petitioner must present new, reliable evidence that was not presented at trial. Schlup, 513 U.S. at 324, 115 S.Ct. at 865. Second, a petitioner must show by a preponderance of the evidence, "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327, 115 S.Ct. at 867.[11]

B. What is new evidence

In Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997), a case on which respondents heavily rely, the Court said that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."[12] Respondents urge that we use this definition

---

11. The Supreme Court explained in House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 2078 (2006), that the actual innocence gateway "requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record."

12. In United States v. Davies, 394 F.3d 182, 191 n.8 (3d Cir. 2005), we indicated that new evidence does not necessarily mean "newly discovered" evidence and may mean "newly presented" evidence. Nevertheless, in that case we did "not weigh in . . . on the 'newly presented' versus 'newly discovered' issues" because we did not need to do so.

and conclude that Houck did not tender new evidence in the District Court as he could have discovered his newly presented affidavit evidence for use at the trial through the exercise of due diligence. Houck is almost compelled to agree in part with respondents because in his petition in the District Court he claimed that his trial counsel was ineffective because he should have discovered and then presented this evidence at the trial. Of course, if this evidence had not been reasonably available before trial, trial counsel would not have been ineffective for failing to discover it and Houck's underlying ineffective assistance claim should have failed as, indeed, it did, though for jurisdictional and procedural reasons.

Yet arguably it is unfair to a petitioner to apply the Amrine statement of the law in cases in which the petitioner claims that he had had ineffective assistance of counsel by reason of his attorney not discovering exculpatory evidence when the petitioner is relying on that very evidence as being the evidence of actual innocence in a gateway case to reach the ineffective assistance of counsel claim. As we have indicated, the rule that Amrine sets forth requires a petitioner, such as Houck, in effect to contend that his trial counsel was not ineffective because otherwise the newly presented evidence cannot be new, reliable evidence for Schlup purposes.

We are not the first Court to recognize the petitioner's dilemma in the situation that we have described, for the Court of Appeals for the Seventh Circuit in Gomez v. Jaimet indicated that: "Particularly in a case where the underlying constitutional violation claimed is the ineffective assistance of counsel premised on a failure to present evidence, a requirement that

14

new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway." 350 F.3d 673, 679-80 (7th Cir. 2003). The <u>Gomez</u> Court dealt with the problem by regarding evidence as new even if it was not newly discovered as long as it was "not presented to the trier of fact . . . ." <u>Id</u>. at 680. Consequently, the <u>Gomez</u> Court indicated that a court can evaluate newly presented evidence in making a determination of whether the evidence is strong enough to establish the petitioner's actual innocence. <u>Id.</u>

We believe, however, that <u>Gomez</u>'s definition of "new" may be too expansive as it seems to go beyond what is needed to remedy the particular problem that that Court identified because it is not anchored to a claim that there had been ineffective assistance of counsel by reason of counsel's failure to present evidence of the petitioner's innocence. On the other hand, the <u>Amrine</u> definition of what is new evidence may be too narrow as its adoption would mean that evidence that was not discovered by an ineffective counsel could not be new evidence even though the petitioner was relying on that very failure as the basis for his claim. Overall we are inclined to accept the <u>Amrine</u> definition of new evidence with the narrow limitation that if the evidence was not discovered for use at trial because trial counsel was ineffective, the evidence may be regarded as new provided that it is the very evidence that the petitioner claims demonstrates his innocence.[13]

---

13. The adoption of the modified <u>Amrine</u> definition would parallel our recognition in <u>Goldblum v. Klem</u>, 510 F.3d 204, 214 (3d Cir. 2007), that sometimes a court must get ahead of itself and address issues relating to the merits of apparently

15

Nevertheless, in this case we stop short of applying a modified <u>Amrine</u> standard because we need not do so in order to consider Houck's affidavits. Instead, we will assume without deciding that Houck's affidavits constitute new evidence that we may consider on the merits in these proceedings. We can make this assumption because, after our review of Houck's affidavits, we conclude, as will be seen below, that even taking into account this evidence he has not demonstrated that no reasonable juror would convict him after considering the newly supplemented record. Thus, Houck has not satisfied the <u>Schlup</u> requirement to open the actual innocence door to allow his procedurally defaulted claims to be considered on the merits.[14]

C. <u>The Newly Presented Evidence</u>

Houck submitted four affidavits, i.e., those of Consuella

procedurally barred claims in a determination of whether a petitioner's claims meet the threshold Antiterrorism and Effective Death Penalty Act of 1996 and abuse-of-the-writ second petition standards governing whether procedurally barred claims may be considered.

14. Although <u>Amrine</u> did include a claim that trial counsel was ineffective by reason of inadequate investigation with respect to certain witnesses who gave inculpatory evidence implicating the petitioner but who later recanted their incriminating testimony, the Court of Appeals did not address the paradox we identify on this appeal.

Simpson, Tequila Harris, Jeneen Askqua, and Kelly Edwards with his traverse, claiming them to be newly discovered evidence and thus, for our purposes, to be new, reliable evidence. The affidavits of Simpson, Harris, and Askqua are nearly identical; each one states that Mt. Zion Christian Academy, where Houck asserted that he picked up his son on October 13, 1997, the day of the assault on Freeman, requires parents/guardians to sign a log book when picking up a student. In addition, Simpson's affidavit states that she saw Houck at the school with his son on October 13, 1997. She, however, does not indicate the time of day that she saw Houck. Edwards, who signed the fourth affidavit, indicated that she had witnessed Freeman's beating and that Houck was not one of his assailants.

### D. Houck's Newly Presented Evidence Would Not Sway a Reasonable Juror

The District Court in its order of August 15, 2005, adopting the magistrate judge's report and recommendation as the opinion of the Court, did not indicate that it had considered the four affidavits, even though Houck relied on the actual innocence doctrine in his objections to the report and recommendation, and the report and recommendation did not mention them either.[15] Accordingly, it would be reasonable for

---

15. As we indicated above, in the order of August 15, 2005, adopting the report and recommendations as the opinion of the Court, the Court set forth that Houck had filed objections to the report and recommendation but they were "without merit."

17

us to remand this case to the District Court with instructions to consider Houck's affidavits and then make an analysis of his claim of actual innocence. Indeed, in his brief on this appeal Houck suggested this result as a possibility, and, at oral argument before us in response to our suggestion that a remand might be appropriate, Houck indicated that he would view that outcome as a reasonable result on this appeal.

Nevertheless, we have determined not to remand the matter. To start with, the District Court decided the case without an evidentiary hearing, and thus that Court was in no better position to consider the newly presented evidence than we are.[16] Second, though we could remand the matter for a plenary hearing at which the affiants could testify, we regard the newly presented evidence as too insubstantial to justify doing so. In this regard, we are cognizant of the fact that Houck is seeking a "rare" remedy that is only available in an "extraordinary" case, Schlup, 513 U.S. at 321, 115 S.Ct. at 864; Hubbard, 378 F.3d at 338, and thus we are reluctant to protract these proceedings and will address the significance vel non of the four affidavits ourselves.

    1.  Simpson says that Houck was at his son's school

---

16. We note that Houck does not claim that he asked the District Court to conduct an evidentiary hearing on his petition. In any event, we see no basis to conclude that the Court abused its discretion in not holding such a hearing and, as we explain above, we see no reason now to order that it do so. See Goldblum v. Klem, 510 F.3d 204, 222 (3d Cir. 2007).

18

Simpson's affidavit dated 4/5/05 states that on October 13, 1997, she picked up a child at Mt. Zion school and on that date at an unspecified time she observed Houck at the school with his son. The affidavit, however, does not explain how she was able to identify Houck. Moreover, Simpson does not explain the basis for her ability to identify someone she claims to have seen more than seven years earlier in what must have been an uneventful encounter. Of course, the affidavit's failure to indicate the time of day that Simpson saw Houck is a critical omission because it is entirely possible that Houck picked up his child and, after dropping him off, joined in the assault on Freeman. Clearly Simpson's affidavit is of limited value as it is unlikely it would convince a reasonable juror that Houck could not have been one of Freeman's assailants.

## 2. The affidavits of Jeneen Askqua and Tequila Harris

The affidavits of Jeneen Askqua and Tequila Harris are of no value at all.[17] Both merely state that on October 13, 1997, the affiant had a child enrolled at the Mt. Zion school and at that time the school required a person picking up a child to sign a log book verifying the date and time at which he or she picked up the child. Neither affidavit even mentions Houck or suggests that he was at the school on October 13, 1997.[18] We also note

17. Harris, who was Houck's fiancée, testified at the trial about what she observed after she returned home on the night of October 13, 1997, but did not mention the procedures at the Mt. Zion school.

18. Harris indicates that her child, LaFond Houck, Jr., was

19

that Houck did not submit the log book to the District Court though he had had many years after his trial before he filed his petition in the District Court to attempt to obtain it.

Though a reading of the Askqua and Harris affidavits, and that of Simpson as well, reveals that they explained the student pick-up procedure at Mt. Zion and Houck's traverse focuses strongly on this procedure, none of the affidavits stated that Houck signed the book or, if he did, what time he signed it. We are simply told that there is a log book.[19] We do not think that a reasonable juror would acquit Houck after hearing this evidence, especially in light of all the other evidence of his guilt.

3. Witness Kelly Edwards says that Houck was not one of the assailants

Kelly Edwards' affidavit describes seeing the attack on Freeman and indicates that Houck was not one of the attackers. But the affidavit does not set forth the affiant's basis for that assertion. This is an important omission inasmuch as the affidavit does not explain how the affiant knew and would have recognized Houck. Moreover, witnesses at the trial testified that Freeman's assailants wore masks, surely an impediment to the

enrolled at the school but does not say that Houck picked up the child on that day.

19. At oral argument before us when the whereabouts of the log book was discussed, Houck speculated that it might be in the basement of the school. Nevertheless, insofar as we are aware, Houck has not made any effort to obtain it.

20

assailants' identification. If the assailants wore masks, it reasonably may be asked how did Edwards know that Houck was not one of them? Clearly, we cannot conclude, by a preponderance of the evidence, that a reasonable juror would acquit Houck after hearing Edwards' testimony.

## IV. CONCLUSION

Houck has argued that his trial counsel was ineffective and that his appellate counsel compounded the error by failing to address the issue of the trial counsel's ineffectiveness. However, he did not raise the failings of trial counsel and appellate counsel during post-conviction relief proceedings in the Pennsylvania state courts with respect to the procedurally barred matters that he wishes the federal courts to consider. Nevertheless, Houck now asks us to excuse his procedural default based on the strength of newly presented evidence demonstrating his actual innocence. We have examined that evidence and do not find it sufficient to invoke the rare and extraordinary remedy that Houck seeks, and accordingly, we will affirm the order of the District Court dated August 15, 2005, and entered on August 16, 2005, denying his petition for a writ of habeas corpus.