SHWARTZ, Circuit Judge.
 

 Jerry Reeves was convicted of robbery, carrying a firearm without a license, and second degree murder relating to an armed robbery of a gas station convenience store that resulted in the death of the store clerk. Reeves was sentenced to life imprisonment without the possibility of parole. He filed a four-months-late habeas petition in federal court asserting ineffective assistance of counsel and seeking to excuse his petition's untimeliness based on the actual innocence exception to procedural default recognized in
 
 Schlup v. Delo
 
 ,
 
 513 U.S. 298
 
 ,
 
 115 S.Ct. 851
 
 ,
 
 130 L.Ed.2d 808
 
 (1995), and extended to include time-barred petitions in
 
 McQuiggin v. Perkins
 
 ,
 
 569 U.S. 383
 
 ,
 
 133 S.Ct. 1924
 
 ,
 
 185 L.Ed.2d 1019
 
 (2013). To qualify for this exception, the petitioner must present new, reliable evidence showing it is more likely than not that no reasonable juror would have voted to convict him.
 
 Schlup
 
 ,
 
 513 U.S. at 324, 329
 
 ,
 
 115 S.Ct. 851
 
 . Because we conclude that Reeves has identified evidence that may show actual innocence that was not presented to the jury, we will vacate and remand for further proceedings.
 

 I
 

 On May 25, 2006, a man robbed a City Gas and Diesel convenience store in Harrisburg, Pennsylvania and shot and killed the store's clerk. The robbery and shooting were captured on the store's silent, black-and-white surveillance video. The video shows that a single robber entered the store and pointed a gun at the clerk. The clerk tried to close a bulletproof glass window, but the robber's arm blocked the window from closing. The robber fired a shot, causing the clerk to fall back. The clerk got up, made a surrendering gesture, and began emptying the cash register. The clerk then fell to the floor, and the robber jumped over the counter through the open bulletproof glass window and collected the remaining money. He then left the store on foot. A local newspaper published a story about the crime the next day.
 

 A few days after the shooting, Reeves, then eighteen years old, was in jail for conduct unrelated to the robbery. A police officer asked him about the convenience store robbery and Reeves claimed that he had witnessed the crime and identified a robber by name. Reeves was subsequently released and attended his family's Memorial Day cookout a few days later. On May 30, 2006, the police interviewed Reeves, who ultimately admitted that he had lied about witnessing the robbery to gain release and attend his family's cookout. He was charged with and pleaded guilty to hindering apprehension.
 

 Around this time, the police had received information about other potential suspects. The same day the robbery occurred, the police were notified that two individuals who had previously been convicted of other crimes-Kai Anderson and Michael Holmes-failed to show up at a work-release center located near the City Gas and Diesel and that Anderson fit the physical description of the robber. On May
 29, 2006, the police spoke to Danielle Ignazzito-the mother of Anderson's child-who stated that Anderson called her two days after the robbery, telling her he had "a lot of money" to give her for outstanding child support. App. 155. She further stated that she received a call from Kenneth Marlow, who told her that Anderson and Holmes had fled the state because police were looking for Anderson for the robbery. On May 31, 2006, Anderson was arrested and admitted escaping the work release center with Holmes, talking to Marlow, and asking Marlow to call Ignazzito. Anderson claimed that a different person committed the robbery.
 

 On June 9, 2006, the police interviewed Marlow. Marlow stated that Anderson told him that he was involved in the robbery and asked Marlow to call Ignazzito for him. A few weeks later, Johnathan Johnston-who had been incarcerated with Anderson-told the police that Anderson confessed to him that he participated in the robbery with Holmes and Holmes's younger brother to obtain money to repay a victim of another robbery Anderson committed. According to Johnston, Anderson provided specific details about the robbery, including that the robber was not supposed to shoot the clerk but that the gun went off, and the clerk fell, got up, then fell again, at which point the robber jumped over the counter to retrieve the money. Johnston also stated that Anderson wanted Johnston's wife to threaten Ignazzito so that she would not talk to the police. Johnston further told the police that Anderson said he had also confessed to Marlow and that Marlow was not supposed to tell Ignazzito about the robbery. On March 9, 2007, the police interviewed Michael Holmes, who admitted to leaving the work release center with Anderson on the day of the robbery but spent the day visiting various people's homes. The record does not indicate why the Anderson leads were not pursued further, but before trial, Reeves's trial counsel was provided with copies of the police reports about Anderson and Holmes.
 

 On July 29, 2009, more than three years after the shooting, Reeves and his then-girlfriend, who was pregnant, were arrested and taken to jail for conduct unrelated to the City Gas and Diesel robbery. Reeves again spoke to police officers and, ten to twelve hours later, confessed to committing the City Gas and Diesel robbery.
 

 At Reeves's trial in 2010, the prosecutor presented the testimony of the officers who had interviewed Reeves, an audio recording of Reeves's confession, and the store surveillance tape of the robbery and shooting, among other evidence. Reeves testified and denied involvement in the robbery, stating that he was experiencing health problems on the day of his July 29, 2009 confession and that detectives told him they would take him to the hospital only if he confessed. He also asserted that detectives promised to release his girlfriend if he confessed and that the police fed him details about the robbery for his taped confession. Reeves further stated that he was in Baltimore at the time of the crime, which caused the prosecution to call a rebuttal witness who testified that while he was in jail with Reeves, Reeves discussed paying a person to say that Reeves was in Baltimore, not Harrisburg, when the robbery occurred. The Kai Anderson evidence was not presented at trial.
 

 The jury convicted Reeves of robbery, carrying a firearm without a license, and second degree murder. He was sentenced to life imprisonment. The Pennsylvania Superior Court affirmed the conviction and sentence on July 1, 2011, and Reeves did not appeal to the Pennsylvania Supreme Court.
 

 On July 30, 2012, Reeves filed a Post-Conviction Relief Act ("PCRA") petition asserting ineffective assistance of counsel based on his trial counsel's failure to present the Kai Anderson evidence, among other alleged deficiencies. On October 10, 2012, the PCRA Court issued a memorandum order notifying Reeves of its intent to dismiss the PCRA petition. Reeves filed objections on October 29, 2012, and the PCRA Court dismissed the petition on November 26, 2012 without a hearing, concluding that trial counsel's failure to present evidence of an alternate suspect did not prejudice Reeves because Reeves confessed to committing the robbery and the store surveillance video corroborated his confession.
 
 [1]
 
 On November 7, 2013, the Pennsylvania Superior Court summarily affirmed and adopted the PCRA Court's October 10, 2012 and November 26, 2012 opinions without additional reasoning. The Pennsylvania Supreme Court denied Reeves's petition for review.
 

 On July 31, 2014, Reeves filed a federal habeas petition with new counsel, asserting ineffective assistance of counsel on the grounds that Reeves's trial counsel failed to investigate and present certain exculpatory evidence at trial, including evidence suggesting that Anderson and Holmes committed the robbery.
 
 [2]
 
 Reeves conceded that his federal habeas petition was filed approximately four months late, but asserted that this procedural defect was excusable because he had shown actual innocence. The petition was referred to the Magistrate Judge for a report and recommendation. The Magistrate Judge opined that the actual innocence exception requires the petitioner to present new evidence and that the evidence Reeves claims should have been presented was available to him and his trial counsel and thus did not qualify as new evidence. As a result, the Magistrate Judge denied an evidentiary hearing and recommended that the District Court dismiss Reeves's petition as untimely. The District Court adopted the Magistrate Judge's report and recommendation, agreed that the evidence concerning alternative suspects was not new evidence because it was available at trial, concluded that Reeves failed to demonstrate actual innocence sufficient to overcome the statute of limitations, and dismissed Reeves's petition as time-barred. The District Court also denied an evidentiary hearing and a certificate of appealability. Reeves sought a certificate of appealability, which we granted as to, among other things, "(1) whether the evidence Appellant relied on in the District Court constitutes 'new' evidence" and "(2) whether Appellant's evidence satisfied the [actual innocence] standard." App. 72-73.
 

 II
 
 [3]
 

 Reeves asserts that his trial counsel was ineffective for failing to present
 at trial evidence of alternative suspects for the shooting, his left-handedness, mental condition at the time of his confession, and history of compulsive lying. He concedes that his petition is late but argues that this exculpatory evidence demonstrates actual innocence and warrants excusing his untimeliness.
 

 A
 

 Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), state prisoners have one year to file a federal habeas petition, which begins to run from "the date on which the judgment became final."
 
 28 U.S.C. § 2244
 
 (d)(1)(A). However, to prevent a "fundamental miscarriage of justice," an untimely petition is not barred when a petitioner makes a "credible showing of actual innocence," which provides a gateway to federal review of the petitioner's otherwise procedurally barred claim of a constitutional violation.
 
 [4]
 

 McQuiggin
 
 ,
 
 569 U.S. at 386, 392
 
 ,
 
 133 S.Ct. 1924
 
 . This "exception[ ] is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons," and it "survived AEDPA's passage."
 
 [5]
 

 Id.
 

 at 392-93
 
 ,
 
 133 S.Ct. 1924
 
 . In this context, actual innocence refers to factual innocence, not legal insufficiency.
 
 Sistrunk v. Rozum
 
 ,
 
 674 F.3d 181
 
 , 191 (3d Cir. 2012) (citation omitted).
 

 To satisfy this standard, first, "a petitioner must present new, reliable evidence" and second, "show by a preponderance of the evidence 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence,' "
 
 Houck v. Stickman
 
 ,
 
 625 F.3d 88
 
 , 93 (3d Cir. 2010) (citing and quoting
 
 Schlup
 
 ,
 
 513 U.S. at 324, 327
 
 ,
 
 115 S.Ct. 851
 
 ), or stated differently, that it is "more likely than not any reasonable juror would have reasonable doubt,"
 

 House v. Bell
 
 ,
 
 547 U.S. 518
 
 , 538,
 
 126 S.Ct. 2064
 
 ,
 
 165 L.Ed.2d 1
 
 (2006). As part of the reliability assessment of the first step, the court "may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence," as well as the circumstances surrounding the evidence and any supporting corroboration.
 

 Id.
 

 at 537, 551
 
 ,
 
 126 S.Ct. 2064
 
 (internal quotation marks and citation omitted);
 
 see
 

 also
 

 McQuiggin
 
 ,
 
 569 U.S. at 399
 
 ,
 
 133 S.Ct. 1924
 
 .
 

 In evaluating the second step-whether it is more likely than not no reasonable juror would convict the petitioner-the court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."
 
 House
 
 ,
 
 547 U.S. at 538
 
 ,
 
 126 S.Ct. 2064
 
 (internal quotation marks and citation omitted). "[M]ere impeachment evidence is generally not sufficient to satisfy the [actual innocence gateway] standard."
 
 Munchinski v. Wilson
 
 ,
 
 694 F.3d 308
 
 , 338 (3d Cir. 2012). However, new, reliable evidence that "undermine[s] the [trial] evidence pointing to the identity of the [perpetrator] and the motive for the [crime]" can suffice to show actual innocence.
 
 Goldblum v. Klem
 
 ,
 
 510 F.3d 204
 
 , 233 (3d Cir. 2007) ;
 
 see
 

 also
 

 Munchinski
 
 ,
 
 694 F.3d at 336-37
 
 (explaining that actual innocence was demonstrated where new evidence both showed that the crime could not have happened in the way the Commonwealth presented at trial and provided an alternative theory that was more appropriate and better fit the facts of the case). In weighing the evidence, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors"; the actual innocence standard "does not require absolute certainty about the petitioner's guilt or innocence."
 
 House
 
 ,
 
 547 U.S. at 538
 
 ,
 
 126 S.Ct. 2064
 
 .
 

 The gateway actual innocence standard is "demanding" and satisfied only in the "rare" and "extraordinary" case where "a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."
 
 McQuiggin
 
 ,
 
 569 U.S. at 386, 392, 401
 
 ,
 
 133 S.Ct. 1924
 
 (internal quotation marks and citations omitted).
 

 B
 

 The threshold requirement for applying the actual innocence standard is new evidence supporting the petitioner's innocence. The Supreme Court opinions addressing the actual innocence gateway do not explicitly define "new evidence," and our sister circuit courts are split on whether the evidence must be newly discovered or whether it is sufficient that the evidence was not presented to the fact-finder at trial. The Court of Appeals for the Eighth Circuit-the first to address the issue-held that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."
 
 Amrine v. Bowersox
 
 ,
 
 238 F.3d 1023
 
 , 1028 (8th Cir. 2001) (internal citation and quotation marks omitted). Thereafter, the Courts of Appeals for the Seventh and Ninth Circuits concluded otherwise: petitioners can satisfy the actual innocence standard's new evidence requirement by offering "newly presented" exculpatory evidence, meaning evidence not presented to the jury at trial.
 
 See
 

 Gomez v. Jaimet
 
 ,
 
 350 F.3d 673
 
 , 679-80 (7th Cir. 2003) ;
 
 Griffin v. Johnson
 
 ,
 
 350 F.3d 956
 
 , 963 (9th Cir. 2003). More recently, the Courts of Appeals for the First, Second, and Sixth Circuits have similarly suggested
 that actual innocence can be shown by relying on newly presented-not just newly discovered-evidence of innocence.
 
 See
 

 Riva v. Ficco
 
 ,
 
 803 F.3d 77
 
 , 84 (1st Cir. 2015) ;
 
 Cleveland v. Bradshaw
 
 ,
 
 693 F.3d 626
 
 , 633 (6th Cir. 2012) ;
 
 Rivas v. Fischer
 
 ,
 
 687 F.3d 514
 
 , 543, 546-47 (2d Cir. 2012). The Court of Appeals for the Fifth Circuit has acknowledged but not weighed in on the circuit split.
 
 [6]
 

 Fratta v. Davis
 
 ,
 
 889 F.3d 225
 
 , 232 (5th Cir. 2018) ;
 
 see
 

 also
 

 Rozzelle v. Sec'y, Fla Dep't of Corr.
 
 ,
 
 672 F.3d 1000
 
 , 1018 n.21 (11
 
 th
 
 Cir. 2012) (refraining from reaching issue of whether petitioner's evidence that was available at trial but was not presented should be considered "new" for purposes of
 
 Schlup
 
 ).
 

 Those courts that define "new evidence" to include evidence not presented at trial find support in
 
 Schlup
 
 . In announcing the standard for a gateway actual innocence claim, the
 
 Schlup
 
 Court stated that a federal habeas court, after being presented with new, reliable exculpatory evidence, must then weigh "all of the evidence, including ... evidence tenably claimed to have been wrongly excluded or to have become available only after the trial" to determine whether no reasonable juror would have found the petitioner guilty.
 
 513 U.S. at 327-28
 
 ,
 
 115 S.Ct. 851
 
 . The reference to "wrongly excluded" evidence suggests that the assessment of an actual innocence claim is not intended to be strictly limited to newly discovered evidence-at least not in the context of reaching an ineffective assistance of counsel claim based on counsel's failure to investigate or present at trial such exculpatory evidence, as was the case in
 
 Schlup
 
 . In addition, in articulating the new, reliable evidence requirement, the Supreme Court stated that the petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."
 
 [7]
 

 Id.
 

 at 324
 
 ,
 
 115 S.Ct. 851
 
 . Moreover, the Court used the phrase "newly presented evidence" in the context of discussing witness credibility assessments that may occur as part of the actual innocence gateway analysis.
 

 Id.
 

 at 330
 
 ,
 
 115 S.Ct. 851
 
 . When considered in the context of the Court's other statement about weighing all evidence-including not only evidence unavailable at trial but also evidence excluded at trial-these references to evidence not presented at trial further suggest that new evidence, solely where counsel was ineffective for failing to discover or use such evidence, requires only that the evidence not be presented to the factfinder at trial. Indeed, among the new evidence presented by the petitioner in
 
 Schlup
 
 was an affidavit containing witness statements that were available at trial,
 
 see
 

 id.
 

 at 310 n.21,
 
 115 S.Ct. 851
 
 , but the Supreme Court did not discuss the significance of the evidence's availability nor reject the evidence outright, which presumably it would have done if the actual innocence gateway was
 strictly limited to newly discovered evidence.
 
 Schlup
 
 therefore strongly suggests that new evidence in the actual innocence context refers to newly presented exculpatory evidence.
 
 [8]
 
 Indeed, in a subsequent decision, the Supreme Court cited
 
 Schlup
 
 for this very proposition, stating that " '[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial."
 
 Calderon v. Thompson
 
 ,
 
 523 U.S. 538
 
 , 559,
 
 118 S.Ct. 1489
 
 ,
 
 140 L.Ed.2d 728
 
 (1998) (quoting
 
 Schlup
 
 ,
 
 513 U.S. at 324
 
 ,
 
 115 S.Ct. 851
 
 ).
 
 [9]
 

 Our Court has not yet resolved the meaning of new evidence in the actual innocence context. In dicta, we have suggested that new evidence generally must be newly discovered, while at the same time recognizing an exception may exist when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover the very exculpatory evidence on which the petitioner relies to demonstrate his actual innocence.
 
 See
 

 Houck
 
 ,
 
 625 F.3d at 94-95
 
 (stating that the Court was "inclined to accept the [Eight Circuit's]
 
 Amrine
 
 definition of new evidence with the narrow limitation that if the evidence was not discovered for use at trial because trial counsel was ineffective, the evidence may be regarded as new provided that it is the very evidence that the petitioner claims demonstrates his innocence" but deciding to "stop short of applying a modified
 
 Amrine
 
 standard" and instead "assum[ing] without deciding" that the petitioner's evidence constituted new evidence). This limited exception avoids an inequity that could lead to the "injustice of incarcerating
 an innocent individual."
 
 McQuiggin
 
 ,
 
 569 U.S. at 393
 
 ,
 
 133 S.Ct. 1924
 
 . Such an inequity could occur under the following circumstances: say that a petitioner was convicted of a murder, and the prosecutor had withheld a videotape depicting a different person committing the crime. Further assume the tape was not revealed until years after the trial. That petitioner could invoke the actual innocence gateway to pursue this
 
 Brady
 
 due process claim because the evidence was newly discovered. Now, assume the same videotape was produced to trial counsel and was available for use at trial, but counsel did not present it to the jury. Under
 
 Amrine
 
 , that petitioner would be forced to concede that the evidence was not new because it was available at trial, and he would be foreclosed from seeking relief under the actual innocence gateway. In contrast, in the former scenario, the same evidence, which existed but was unknown to the petitioner, would be deemed new evidence that could support the actual innocence gateway.
 

 As the
 
 Gomez
 
 court stated, "in a case where the underlying constitutional violation claimed is ineffective assistance of counsel premised on a failure to present [such] evidence, a requirement that the new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway." 350 F.3d at 679-80. To overcome this roadblock, we now hold that when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the
 
 Schlup
 
 actual innocence gateway.
 

 The approach we adopt is consistent with
 
 Schlup
 
 and the rulings of many of our sister circuits. Moreover, it recognizes that "the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system."
 
 Schlup
 
 ,
 
 513 U.S. at 325
 
 ,
 
 115 S.Ct. 851
 
 . Indeed, "the conviction of an innocent person [is] perhaps the most grievous mistake our judicial system can commit," and thus, the contours of the actual innocence gateway must be determined with consideration for correcting "such an affront to liberty."
 
 Satterfield v. Dist. Att'y Phila.
 
 ,
 
 872 F.3d 152
 
 , 154 (3d Cir. 2017). The limited approach we adopt to evaluate new evidence to support an actual innocence gateway claim, where that claim is made in pursuit of an underlying claim of ineffective assistance of counsel: (1) ensures that reliable, compelling evidence of innocence will not be rejected on the basis that it should have been discovered or presented by counsel when the very constitutional violation asserted is that counsel failed to take appropriate actions with respect to that specific evidence; and (2) is consistent with the Supreme Court's command that a petitioner will pass through the actual innocence gateway only in rare and extraordinary cases.
 
 Schlup
 
 ,
 
 513 U.S. at 324
 
 ,
 
 115 S.Ct. 851
 
 .
 
 [10]
 

 C
 

 Here, the Magistrate Judge's report and recommendation and the District Court's decision adopting that report both understandably concluded that exculpatory evidence available to, but not presented by, Reeves's trial counsel-such as the evidence concerning alternative suspects-was not new evidence for purposes of the
 actual innocence gateway.
 
 [11]
 
 They therefore did not proceed to determine the reliability of the evidence or consider whether such evidence, assessed with all the rest of the evidence adduced at trial, would more likely than not convince any reasonable juror not to convict Reeves. In light of their view that Reeves failed to satisfy the actual innocence gateway standard, they also did not reach the merits of Reeves's ineffective assistance of counsel claim. Because we hold that under the circumstances presented here, the Kai Anderson evidence is "new," given that it was known but not presented allegedly due to his counsel's ineffective assistance, we will vacate the District Court's order and remand. If on remand the District Court concludes that this new evidence is reliable, then it should proceed to undertake a holistic assessment of the new, reliable evidence and the evidence presented at trial to determine whether Reeves has shown it is more likely than not that no reasonable juror would have convicted him. If Reeves makes this showing, then the District Court should review his ineffective assistance of counsel claim on the merits under the applicable AEDPA standard of review.
 

 III
 

 For the reasons above, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.
 

 In its discussion concerning the Kai Anderson evidence, the PCRA Court stated: "Accepting Petitioner's argument that all of the hearsay and non-hearsay testimony that would have been presented at trial would have been admissible, Petitioner fails to explain how this testimony would have rebutted Petitioner's own admission to the robbery/homicide." App. 492.
 

 Besides the evidence concerning other alternative suspects, Reeves pointed to trial counsel's failures to adequately develop and/or present (1) evidence of Reeves's left-handedness and the shooter's right-handedness, (2) inconsistencies between Reeves's confession and the surveillance video, (3) a news article of the robbery which would show that Reeves's confession contained public information about the crime, (4) medical records showing Reeves was hospitalized on the day of his confession for a suicide attempt and had a history of mental health problems, and (5) evidence of Reeves's history of uncontrolled lying.
 

 The District Court had jurisdiction under
 
 28 U.S.C. § 2254
 
 . Our Court has jurisdiction pursuant to
 
 28 U.S.C. §§ 1291
 
 and 2253. Our review is plenary where, as here, the District Court did not conduct an evidentiary hearing.
 
 Houck v. Stickman
 
 ,
 
 625 F.3d 88
 
 , 93 (3d Cir. 2010). In addition, we exercise plenary review over the District Court's determination of a petitioner's claim of actual innocence.
 
 Sweger v. Chesney
 
 ,
 
 294 F.3d 506
 
 , 522 (3d Cir. 2002).
 

 In contrast to gateway (or procedural) actual innocence claims, freestanding (or substantive) claims of actual innocence assert innocence without any accompanying constitutional defect in the trial resulting in the conviction.
 
 See
 

 Schlup
 
 ,
 
 513 U.S. at 313-16
 
 ,
 
 115 S.Ct. 851
 
 (distinguishing between the two types of claims). The Supreme Court has not definitively resolved whether such freestanding actual innocence claims are cognizable,
 
 McQuiggin
 
 ,
 
 569 U.S. at 392
 
 ,
 
 133 S.Ct. 1924
 
 , but to the extent they are, they are assessed under a more demanding standard, since the petitioner's claim is that his conviction is constitutionally impermissible "even if his conviction was the product of a fair trial,"
 
 Schlup
 
 ,
 
 513 U.S. at 316
 
 ,
 
 115 S.Ct. 851
 
 .
 
 See
 

 House v. Bell
 
 ,
 
 547 U.S. 518
 
 , 555,
 
 126 S.Ct. 2064
 
 ,
 
 165 L.Ed.2d 1
 
 (2006) (concluding that the petition satisfied the gateway innocence standard announced in
 
 Schlup
 
 but not the higher standard for freestanding innocence discussed in
 
 Herrera v. Collins
 
 ,
 
 506 U.S. 390
 
 , 417,
 
 113 S.Ct. 853
 
 ,
 
 122 L.Ed.2d 203
 
 (1993) ). Gateway innocence claims, on the other hand, assert a claim of actual innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."
 
 Schlup
 
 ,
 
 513 U.S. at 316
 
 ,
 
 115 S.Ct. 851
 
 .
 

 Although AEDPA explicitly provides actual innocence exceptions to some of its procedural provisions, and these exceptions incorporate a newly discovered evidence standard,
 
 see
 

 28 U.S.C. §§ 2244
 
 (b)(2)(B) and 2254(e)(2), the Supreme Court has explained that the actual innocence miscarriage of justice exception is separate from AEDPA's statutory provisions, and the exception survived AEDPA's passage.
 
 McQuiggin
 
 ,
 
 569 U.S. at 393-98
 
 ,
 
 133 S.Ct. 1924
 
 . Thus, AEDPA's actual innocence provisions are not dispositive of the scope of new evidence under the actual innocence miscarriage of justice exception recognized by the Supreme Court in
 
 Schlup
 
 ,
 
 House
 
 , and
 
 McQuiggin
 
 .
 

 Recent Fifth Circuit decisions, however, have included language arguably suggesting an inclination toward a newly discovered standard.
 
 See
 

 Fratta
 
 ,
 
 889 F.3d at
 
 232 n.21 (citing
 
 Moore v. Quarterman
 
 ,
 
 534 F.3d 454
 
 , 465 (5th Cir. 2008), with a parenthetical stating that "evidence was not 'new' where it was always within the reach of [petitioner's] personal knowledge or reasonable investigation");
 
 Floyd v. Vannoy
 
 ,
 
 894 F.3d 143
 
 , 155-58 (5th Cir. 2018) (using the phrase "newly-discovered evidence" in discussing fingerprint comparison evidence that existed at the time of trial but was neither known to the petitioner nor presented at trial, and holding that the evidence met the
 
 Schlup
 
 standard).
 

 Post-
 
 Schlup
 
 , the Supreme Court clarified that credible, actual innocence evidence was not limited to these three types of evidence.
 
 House
 
 ,
 
 547 U.S. at 537
 
 ,
 
 126 S.Ct. 2064
 
 .
 

 The
 
 Schlup
 
 opinion discussed above was written by Justice Stevens and joined by Justices O'Connor, Souter, Ginsburg, and Breyer, while the four remaining justices dissented. Justice O'Connor, in addition to joining Justice Stevens's decision, also separately concurred, stating that she understood the majority to hold that a petitioner " 'must show that it is more likely than not that no reasonable juror would have convicted him' in light of newly discovered evidence of innocence."
 
 513 U.S. at 332
 
 ,
 
 115 S.Ct. 851
 
 (citation omitted). She then proceeded to state that the majority did not "decide whether the fundamental miscarriage of justice exception is a discretionary remedy."
 

 Id.
 

 at 333
 
 ,
 
 115 S.Ct. 851
 
 . Had Justice O'Connor merely joined part of the majority opinion, her use of "newly discovered evidence" would have constituted
 
 Schlup
 
 's holding.
 
 See
 

 Marks v. United States
 
 ,
 
 430 U.S. 188
 
 , 193,
 
 97 S.Ct. 990
 
 ,
 
 51 L.Ed.2d 260
 
 (1977) (explaining that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."). However, Justice O'Connor joined the majority opinion, and her separate discussion of the actual innocence gateway test reflects agreement with that standard, not any desire to narrow the majority's construction of it. Nor did Justice O'Connor discuss any problems with the majority's reasoning in support of the test or note any distinction between newly presented and newly discovered evidence. Under these circumstances, the fairest reading of
 
 Schlup
 
 is that the test articulated by the majority opinion and its reference to evidence not presented (at least in the context of an ineffective assistance of counsel claim) was indeed supported by a majority of the justices, and therefore binding. Moreover, subsequently in
 
 Calderon
 
 , Justice O'Connor joined the majority opinion without writing separately, and the majority cited
 
 Schlup
 
 for the assertion that "a claim of actual innocence must be based on reliable evidence not presented at trial" in order to be credible.
 
 Calderon v. Thompson
 
 ,
 
 523 U.S. 538
 
 , 559,
 
 118 S.Ct. 1489
 
 ,
 
 140 L.Ed.2d 728
 
 (1998).
 

 The Calderon dissenters also stated that "as the Court realizes, our standard dealing with innocence of an underlying offense requires no clear and convincing proof ... and the Court would be satisfied with a demonstration of innocence by evidence not presented at trial, even if it had been discovered, let alone discoverable but unknown, that far back."
 
 523 U.S. at 573
 
 ,
 
 118 S.Ct. 1489
 
 (Souter, J., dissenting) (internal quotation marks and citations omitted).
 

 The Eighth Circuit's approach in
 
 Amrine
 
 and the Fifth Circuit's seemingly contrary approach in
 
 Floyd
 
 and
 
 Fratta
 
 are unpersuasive, as those courts provided no reasoning to support their narrower constructions of "new evidence."
 

 The Magistrate Judge relied on three Third Circuit opinions,
 
 Hubbard
 
 ,
 
 Goldblum
 
 , and
 
 Sistrunk
 
 , as support for this conclusion that exculpatory evidence available to trial counsel but which counsel failed to present at trial did not constitute new evidence. However, "[t]he 'new' evidence
 
 Hubbard
 
 puts forth in alleging actual innocence is nothing more than a repackaging of the record as presented at trial."
 
 Hubbard v. Pinchak
 
 ,
 
 378 F.3d 333
 
 , 341 (3d Cir. 2004). As the Magistrate Judge acknowledged, we assumed for purposes of the appeal in
 
 Goldblum
 
 that the pathologist's report was new, reliable evidence,
 
 Goldblum
 
 ,
 
 510 F.3d at 226
 
 . Finally,
 
 Sistrunk
 
 did not characterize the petitioner's federal habeas claims as based on the alleged ineffective assistance of counsel who failed to discover or present to the fact-finder the exculpatory evidence demonstrating his actual innocence.
 
 See
 

 Sistrunk
 
 ,
 
 674 F.3d at 185-87
 
 .