**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-2126

———

JUSTIN GLOVER, JR.,
Appellant

v.

SUPERINTENDENT FAYETTE SCI; ATTORNEY GENERAL PENNSYLVANIA

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 3-14-cv-01800)
District Judge:  Honorable Matthew W. Brann

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 13, 2023

———————

Before:  PHIPPS, McKEE, and RENDELL, *Circuit Judges*.

(Filed:  August 15, 2023)

———————

OPINION[*]

———————

PHIPPS, *Circuit Judge*.

Justin Glover, an inmate serving a life sentence at State Correctional Institution – Fayette,

appeals the denial of his Rule 60(b)(6) motion for relief from a judgment denying his petition for

a writ of habeas corpus.  In that motion, he claimed actual innocence for the first time as a basis

———————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute
binding precedent.

for allowing reconsideration of the ineffective-assistance-of-counsel claims that the District Court rejected in denying his petition. For the reasons below, we will affirm that order.

In 2006, Glover was criminally charged in the Court of Common Pleas of Dauphin County, Pennsylvania, for first-degree murder, conspiracy to murder, and abuse of a corpse. At trial, the prosecution argued that Glover and a codefendant killed another man, Wesley Person, for skimming proceeds from a fraudulent loan scheme that the three men ran together. Person was last seen shopping a couple of days before Christmas in 2005, and through circumstantial evidence, the prosecution asserted that Glover along with his codefendant killed Person in a house in Harrisburg owned by the codefendant and afterwards burned Person's body on the side of Interstate 83, across the Pennsylvania border in Maryland. Although the prosecution had no direct evidence that Glover was at either the murder scene or the body dump, cell phone data suggested that Glover was in Maryland near the location of the burned body on the night of the murder. Also, several witnesses testified about the fraudulent loan scheme and Glover's incriminating behavior during the days surrounding Person's disappearance. One of those witnesses, Abdul McCauley, testified that he had seen Person leaving the shopping mall with Glover the day Person disappeared, and that Glover had seemed anxious and paranoid in the days following the murder and at Person's funeral. The jury convicted Glover on all three counts, and he received a life-without-parole sentence.

Glover challenged his conviction through the state-court system. On direct appeal, his conviction and sentence were sustained. Later, he collaterally challenged his conviction through a series of petitions and appeals under Pennsylvania's Post Conviction Relief Act, commonly referred to as the 'PCRA.' *See* 42 Pa. Cons. Stat §§ 9541–46. Those efforts were similarly unsuccessful.

2

In 2014, after the denial of the first of his PCRA petitions and the related appellate proceedings, Glover petitioned for a writ of habeas corpus in the Middle District of Pennsylvania. *See* 28 U.S.C. § 2254; *see also id.* § 2241(d) (permitting prisoners in state custody to file habeas petitions in either the federal district in which they are incarcerated or the federal district encompassing the state court in which they were convicted). In his petition, Glover claimed that his state-court trial counsel was ineffective for failing to impeach McCauley based on a plea bargain that McCauley received from the prosecution on unrelated charges.

But Glover had not presented that argument in his initial PCRA challenge. By not doing so, Glover waived his ability to raise it on further PCRA petitions. *See* 42 Pa. Cons. Stat. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). And because that rule foreclosed collateral review of that issue in the state courts, the District Court considered that claim procedurally defaulted and dismissed his petition. *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) ("Under [the] doctrine [of procedural default], federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with [the State's] own procedural rules.'" (last alteration in original) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000))). Glover attempted to appeal that ruling, but this Court denied a certificate of appealability, and the Supreme Court rejected Glover's petition challenging that order. *See Glover v. Superintendent Fayette SCI*, 2017 WL 7798635, at *1 (3d Cir. Nov. 16, 2017) (denying certificate of appealability); *Glover v. Lane*, 138 S. Ct. 1991 (mem.) (denying petition for writ of certiorari). *See generally* 28 U.S.C. § 2253(c).

On May 3, 2021, Glover filed *pro se* a motion for relief from judgment with respect to the order of August 1, 2017, denying his federal habeas petition. He did so under Rule 60(b)(6), claiming actual innocence as a gateway to excuse the procedural default as to his ineffective-

3

assistance-of-counsel claim. *See* Fed. R. Civ. P. 60(b)(6); *Gonzalez v. Crosby*, 545 U.S. 524, 531–32, 532 n.4 (2005) (recognizing that Rule 60(b)(6) motions challenging procedural default are not barred as second or successive petitions under 28 U.S.C. § 2244(b)). The District Court denied that motion, finding that the evidence Glover presented did not satisfy the standards of Rule 60(b)(6) or establish his actual innocence necessary to consider the merits of his procedurally defaulted ineffective-assistance-of-counsel claim. Glover timely appealed, and this Court granted a certificate of appealability. *See* 28 U.S.C. § 2253.

To overcome the procedural default and allow consideration of the merits of his ineffective-assistance-of-counsel claim, Glover must establish actual innocence. *See Howell v. Superintendent Albion SCI*, 978 F.3d 54, 59 (3d Cir. 2020); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But proving actual innocence is a heavy burden: the petitioner must demonstrate that "in light of the new evidence, *no juror*, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995) (emphasis added). That "demanding" standard is "satisfied only in the 'rare' and 'extraordinary' case." *Reeves v. Fayette SCI*, 897 F.3d 154, 161 (3d Cir. 2018) (quoting *McQuiggin*, 569 U.S. at 386, 392).

Glover's Rule 60(b)(6) motion does not clear that high threshold. His principal evidence of actual innocence is a sworn statement by McCauley's former cellmate, who claims that McCauley provided false testimony against Glover in return for the favorable plea deal. But the crux of that statement is hearsay – the former cellmate's statement about McCauley, *see* Fed R. Evid. 801(c) – and that falls well short of the reliability required for an actual innocence claim. As this Court has recognized, actual innocence is "a supremely high bar" that cannot be cleared by "the second-hand retelling of a jailhouse confession." *Sistrunk v. Rozum*, 674 F.3d 181, 192 (3d Cir. 2012); *see also Herrera v. Collins*, 506 U.S. 390, 417 (1993); *Howell*, 978 F.3d at 59

(evaluating the reliability of the new evidence before turning to the inquiry as to whether the jury could have convicted petitioner in light of the new evidence).[1]

Nor could the affidavit – even if it were reliable – overcome the other evidence presented at trial of Glover's guilt. If taken as reliable, the affidavit suggests that there was a basis for impeaching McCauley as his plea agreement provided a strong motive for him to lie: in return for his testimony, he served only 30 days of probation for a crime for which he faced up to 11 years in prison. Even so, that alone does not clear the actual innocence bar because "mere impeachment evidence is generally not sufficient to show actual innocence by clear and convincing evidence." *Munchinski v. Wilson*, 694 F.3d 308, 335 (3d Cir. 2012).

And in this case, Glover does not complement McCauley's impeachability with additional "individual and fact-specific" reasons that support actual innocence. *Howell*, 978 F.3d at 60. To the contrary, despite not attempting to impeach McCauley on the basis of his plea deal,[2] Glover's trial counsel conducted an extensive cross-examination and impeached McCauley on other grounds – prior inconsistent statements and an evidence-tampering conviction. Also, while McCauley was an important witness, the prosecution could make its case without him as multiple other witnesses testified to Glover's involvement in the loan

---

[1] The District Court found that the delay between the swearing of the affidavit (June 2019) and Glover's filing of his Rule 60(b)(6) motion (May 2021) also undermined the reliability of the affidavit. While a court "may consider how the timing of [the petitioner's] submission . . . bears on the probable reliability of that evidence," *Reeves*, 897 F.3d at 161 (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)), this delay is not the type that raises reliability concerns. *See House*, 547 U.S. at 558 (Roberts, C.J., concurring) (noting fourteen-year delay in witnesses coming forward following trial undermined the testimony's reliability). It is reasonable for a party, especially an incarcerated person, to secure a sworn statement while a witness is willing and able to provide it – even before such a statement may be used in litigation.

[2] McCauley's sentence of thirty days' probation and a fine became final on November 14, 2006, well before McCauley testified in Glover's trial in February of 2008. The fact that McCauley had already served his sentence by the time of Glover's trial diminishes any prejudice that Glover may have suffered by Defense counsel's failure to impeach for bias based on his plea agreement; he had little to gain by cooperating further with the Government.

scheme and his suspicious behavior the day of and following Person's disappearance. In addition to that testimony, the prosecution presented cell phone data that placed Glover near the precise location Person's body was found the night of the murder.

Thus, Glover cannot show his actual innocence, and this Court cannot reach his underlying ineffective-assistance-of-trial-counsel claim. Accordingly, we will affirm the District Court's order denying Glover's Rule 60(b)(6) motion.